**Mary F. SEABROOK, Plaintiff,**

v.

**POSTAL FINANCIAL SERVICES, INC., Defendant.**

**No. 80 Civ. 4630–CSH.**

United States District Court,
S. D. New York.

Dec. 10, 1981.

Daniel L. Kurz, Monsey, N.Y., for plaintiff.

George A. Sirignano, Jr., Smith, Rancht, Pollock, Manos & Connors, P.C., White Plains, N.Y., for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff commenced this action against defendant alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* and related state statutes. She sought a declaration that the loan made to her by defendant was void and unenforceable, together with the recovery of statutory penalties and damages. The complaint was filed on August 12, 1980. Plaintiff propounded interrogatories to defendant which inspired settlement discussions. Those initial efforts at compromise failed, and defendant answered the complaint, answered the interrogatories, and counterclaimed for the balance of the unpaid loan. Plaintiff replied to the counterclaim. A pretrial conference was held before this Court on November 3, 1980. On January 15, 1981, the parties entered into a stipulation of settlement providing for the forgiveness and cancellation of the unpaid balance of the loan, in the amount of $2,023.15; payment to plaintiff by defendant of a further sum of $400 in settlement of the additional claims; and payment by defendant of costs and reasonable attorney's fees to a successful plaintiff is specifically provided for by the statute. 15 U.S.C. § 1640(a)(2). Plaintiff thereafter moved for the allowance of an attorney's fee in an amount which defendant opposed as excessive. Affirmations of counsel and memoranda of law were exchanged. The Court held an evidentiary hearing on December 4, 1981. Having considered the foregoing, the Court now makes the following award.

Plaintiff's counsel is Daniel L. Kurz, Esq. He is a sole practitioner maintaining offices in Westchester County at White Plains, and Rockland County at Monsey. Mr. Kurz is admitted to practice before a number of federal courts, and his practice over the past seven years has been concentrated upon federal statutory litigation. For the past three years, he has concentrated particularly upon enforcement actions, including actions brought under the federal Consumer Credit Protection Act, of which the Truth in Lending Act forms a part.

In particular, Mr. Kurz has handled about twenty Truth in Lending Act cases to a conclusion; five are now pending. His first Truth in Lending Act case was tried in a state court, resulting in a judgment in plaintiff's favor. A notice of appeal was withdrawn. During the successful prosecution of that claim, Mr. Kurz acquired his initial expertise in the preparation and presentation of this sort of claim. Each of his subsequent cases under the statute, of which the present case is one, were settled.

For entirely practical and understandable reasons, Mr. Kurz screens his prospective clients, and does not accept Truth in Lending Act claims for litigation unless he regards them as meritorious. Such claims are handled on a contingent basis, and Mr. Kurz has no interest in wasting his time. Mr. Kurz's professional ability in this area, and the effectiveness of his selection of claims to prosecute, are both evidenced by the unbroken string of acceptable settlements which followed his initial, successful trial.

In the case at bar, plaintiff's counsel has testified that he devoted 77.4 hours to this case, including the application for a fee allowance and hearing thereon. Compensation is requested at a rate of $80 per hour, giving a "lodestar" figure of $6192. Plaintiff also requests an "incentive," "bonus," or "premium" award of 25% of the lodestar figure, or $1548. Thus the claim for an attorney's fee total $7740. In addition, out-of-pocket expenses in an amount of $100.18 are claimed.[1]

In considering applications for attorney's fees, the Second Circuit has established a two-step calculation procedure, recently summarized in *Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496, 505 (2d Cir. 1980):

"First, the court should establish a 'lodestar' figure, obtained 'by multiplying the number of hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area.' *City of Detroit v. Grinnell Corp. ('Grinnell II')*, 560 F.2d 1093, 1098 (2d Cir. 1977). See also *City of Detroit v. Grinnell Corp. ('Grinnell I')*, 495 F.2d 448 (2d Cir. 1974). Next, the court may adjust the lodestar figure upward or downward to take account of such subjective factors as the risk and complexity of the litigation and the quality of the representation."

See also *Beazer v. New York City Transit Authority*, 558 F.2d 97 (2d Cir. 1977).

With respect to the "lodestar" figure, the claimed rate must be reasonable; and the time claimed, to be compensable, must be reasonably and necessarily spent. *Mid-Hudson Legal Services v. G & U, Inc.*, 465 F.Supp. 261 (S.D.N.Y.1978), citing *Boe v. Colello*, 447 F.Supp. 607, 610 (S.D.N.Y. 1978).

In the case at bar, I find that Mr. Kurz's claimed hourly rate of $80 is reasonable, and that the 77.4 hours were reasonably and necessarily devoted to the case. Mr. Kurz was energetically cross-examined by counsel for defendant, but I am not persuaded that the requested award is vulnerable on these points. Mr. Kurz kept detailed time entries. While his original entries were composed in a form of minute, almost feverish-appearing scrawl, such uncertainties and ambiguities which arose from those original entries were satisfactorily explained, in other exhibits and by Mr. Kurz's testimony. I find that the contemporaneous entries accurately reflect the time devoted by Mr. Kurz to the investigation, initiation, prosecution, and settlement of this case; and that the time reflected was reasonably and necessarily spent. While, as noted, Mr. Kurz is familiar through experience with this sort of litigation, it was necessary for him to develop the facts with his client, and to supplement the normal legal research by considering the pertinent statute in Indiana, since the loan agreement raised the possibility of the applicability of Indiana law. Mr. Kurz then prepared relatively far-reaching and (judg-

1. The figures contained in the original fee application have been amended to reflect supplemental amounts set forth in counsel's letter of December 7, 1981.

ing by the settlement achieved shortly thereafter) effective interrogatories, digested the responses, and negotiated the settlement. I do not question the affidavit of George A. Sirignano, Jr., Esq., counsel for the defendant, that his time on the case totalled approximately 20 hours. But Mr. Sirignano was assisted, in the preparation of the interrogatory answers, by defendant's house counsel, whose time is not included in that total; and the defendant, once served with the complaint and the vulnerability of its defense having been revealed by Mr. Kurz's interrogatories, really did nothing more than roll over and put its feet in the air. Not infrequently, the hunter devotes more time to the chase than the quarry.

Accordingly plaintiff may recover the lodestar figure of $6192 in an attorney's fee. No question having been raised with respect to the claimed out-of-pocket expenses of $100.18, they will be awarded as well.

The question of substance arises with respect to the claimed 25% bonus figure. A number of subjective factors come to bear; the most significant was considered in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) at 471:

"Perhaps the foremost of these factors is the attorney's 'risk of litigation,' i.e., the fact that, despite the most vigorous and competent of efforts, success is never guaranteed. The greater the probability of success, of either ultimate victory on the merits or of settlement, the less this consideration should serve to amplify the basic hourly fee. The tangible factors which comprise the 'risk of litigation' might be determined by asking the following questions: has a relevant government action been instituted or, perhaps, even successfully concluded against the defendant; have related civil actions already been instituted by others; and, are the issues novel and complex or straightforward and well worn? Thus determined, the litigation risk factor might well be translated into mathematical terms."

I mean no disparagement of Mr. Kurz when I say that this analysis militates against a bonus award in the case at bar. Mr. Kurz, understandably selective in those truth-in-lending clients he chooses to represent, is nonetheless following, in respect of a solidly meritorious case, a "straightforward and well worn" path. The issues are not particularly complex; if the defendant has failed to abide by the requirements of the statute, liability follows. This particular defendant had been successfully sued under the statute in the past; the evidence at the hearing reflects that Mr. Kurz obtained helpful information from counsel for a previously successful plaintiff against it. Mr. Kurz stated that the complexities which most frequently arise in truth-in-lending cases are (1) trial judges who do not understand or refuse to apply the law; and (2) technical defenses which, in certain circumstances, may be available to a defendant. In the case at bar, I flatter myself that the first consideration did not arise; nor did the present defendant assert any of the defenses to which Mr. Kurz referred in his testimony.

I must also be mindful of the Second Circuit's admonition to scrutinize attorneys' fee applications with an "eye to moderation," seeking to avoid either the reality or the appearance of awarding "windfall fees." *Beazer, supra*, at 101, quoting *City of Detroit v. Grinnell Corp., supra*, at 469, 470. In the case at bar, plaintiff was relieved of payment of an unpaid loan balance of $2023.15, and recovered damages of $400. The settlement thus has a direct economic value of $2423.15, and the lodestar fee figure is $6192. Considering the totality of the circumstances, and the desirability of avoiding even the appearance of windfall awards, I conclude that the fee in the present case should not be increased beyond the lodestar figure. There is, of course, authority for declining, in appropriate circumstances, the addition of a bonus or premium to the lodestar figure. *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir. 1977).

The Clerk of the Court is directed to enter judgment in favor of plaintiff and against defendant, in respect of attorney's fees and expenses, in the amount of $6292.18, said judgment to bear interest at the rate of 9% per annum from the date of judgment until paid.

It is So Ordered.