**FLEET BANK OF MAINE**, Plaintiff,

v.

**Joan T. STEEVES and James L. Swartz, D.O., Defendants and Counterclaim Plaintiffs,**

**and**

**Pond Cove Millwork Co., et al., Parties-in-Interest,**

**and**

**Federal Deposit Insurance Corporation, Counterclaim Defendant.**

**Civ. No. 91–0076–P–C.**

United States District Court, D. Maine.

April 8, 1992.

---

See also 785 F.Supp. 209.

William H. Leete, Jr., Beagle, Pearce, Feller & Ridge, Portland, Me., for Bay Elec.

Anthony E. Perkins, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for defendant.

Sidney St. F. Thaxter, Curtis, Thaxter, Stevens, Broder & Micoleau, Portland, Me., for Pond Cove Millwork.

Andrew M. Horton, Verrill & Dana, Portland, Me., for plaintiff.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

GENE CARTER, Chief Judge.

This matter is now before the Court on Plaintiff's Request for Attorneys' Fees and Costs, to which Defendant Steeves' Objection was filed on March 3, 1992, and to which Plaintiff responded on March 16, 1992. Plaintiff seeks reimbursement for attorneys' fees and expenses in the total amount of $25,603.21. This amount is comprised of hourly charges in the amount of $23,814.50 for professional and paralegal services, and costs in the amount of $1,788.71 incurred in rendering those services. Defendant's Objection requests that this Court allow legal fees in an amount not to exceed $10,000, comparable to what Defendant's counsel incurred in fees in this case.

The Court has now carefully reviewed and considered the written submissions of

the parties, including the breakdown of attorney fee records, and for the reasons that follow, it determines that the appropriate total portion of Plaintiff's attorneys' fees and costs for which reimbursement will be had is $13,434.31.

## I. PROFESSIONAL AND PARALEGAL SERVICES

Attorneys' fees must be *reasonable.* This Court's role "as the guarantor of fairness obligates it not to accept uncritically what lawyers self-servingly suggest is reasonable compensation for their services." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir.1991). As the Supreme Court noted in the context of 42 U.S.C. section 1988: "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, *just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.*" *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983) (emphasis added).

■ Here, the Court finds that the fees charged totalling $23,814.50 for professional and paralegal services in a routine foreclosure action, even one that involves an issue of federal law, are unreasonable in terms of the Court's assessment of the difficulty of the issues, Plaintiff's counsel's familiarity with these issues, and the result achieved.[1] In this regard, the Court finds instructive the opinion of the Court of Appeals for the First Circuit in *Furtado v. Bishop*, 635 F.2d 915, 923 (1st Cir.1980).[2]

In addressing one issue pertaining to attorneys' fees, the drafting of the plaintiffs' appellate brief, the *Furtado* court noted:

But while we believe the *product* of the appellate effort was appropriately tailored to the demands of the task at hand, the amount of time claimed to create this product still troubles us. In our judgment, the number of hours claimed should be reduced by one half to reflect possible duplication of effort and diseconomies of committee authorship that may occur in a case where there is no demonstration to the contrary.

*Id.* (emphasis in original).

In *Furtado*, the court was "influenced by the plaintiffs' reluctance to request and defend a single total fee that they authentically believe to be justifiable." 635 F.2d at 923 n. 16. The *Furtado* court further noted:

Rather than stand behind a single dollar total, the plaintiffs presented a list of hours and requested the district court to "make an award based upon a rate of $100 per hour for those legal services which the Court finds to have been reasonably expended and not duplicated." We would have preferred a convincing demonstration of "billing judgment", illustrating that plaintiffs themselves had separated the "hard" hours from the "soft."

*Id.* at 923–34 n. 16.[3]

Here, although Plaintiff's counsel, unlike counsel in *Furtado*, presents a "single dollar total," the Court is unconvinced that Plaintiff's counsel has exercised any "billing judgment," based on the submitted affidavits and time records. This Court has

---

**1.** Plaintiff's counsel cites as authority for its fee determination the Maine Law Court case of *Webber Oil Co. v. Murray,* 551 A.2d 1371 (Me. 1988). *See* Memorandum in Reply to Objection to Plaintiff's Request for Attorneys' Fees ("Plaintiff's Memorandum") at 4. In *Murray,* the Law Court held that "a one-third fee was a customary and reasonable fee in a collection case." 551 A.2d at 1377. The litigation in *Murray,* however, involved a six-day trial, not merely a summary judgment motion. *Id.* at 1373.

**2.** Although *Furtado* addressed attorneys' fees in the context of 42 U.S.C. § 1988, it has relevance to the instant case.

**3.** A leading treatise described "billing judgment" as follows:

This concept may be most clearly understood by viewing fee computation as a process similar to preparing a bill for a client. It is sometimes true that not all time which an attorney or a firm has spent on a given suit is charged to the client, whether because the firm itself views the total fee as excessive for the results produced, or the firm views certain of its time as having been nonproductive or duplicative.

M. Derfner & A. Wolf, *Court Awarded Attorney Fees* ¶ 16.02, at 16–46 n. 111 (1991).

noted that "[t]he record must ... be detailed enough to enable the Court to determine if ... the attorney has exercised 'billing judgment' in submitting the fee application." *Poultry Processing, Inc. v. Old Orchard Ocean Pier Co.*, 780 F.Supp. 846, 864 (D.Me.1991) (quoting *Inmates of Maine State Prison v. Zitnay*, 590 F.Supp. 979, 985 (D.Me.1984)). Here, no evidence exists in the record that Plaintiff's counsel demonstrated billing judgment by separating the "hard" hours from the "soft." The number of hours billed for this foreclosure action suggests that Plaintiff's counsel has, in fact, billed all hours—"hard" and "soft."

■ Although one principal attorney worked on this case, Alexandra Treadway, a total of *eighteen* other professional and paralegal personnel of the firm, including five partners, eight associates, and five paralegals, also billed hours.[4] The number of hours billed by these eighteen attorneys and paralegals is excessive.[5] Painstaking scrutiny of the time allocation of the attorneys does not reflect any significant contributions of worth by this host of professional attendants. In effect, Plaintiff's counsel has failed to exercise the requisite "billing judgment" to ensure that its fees in this case are reasonable.

While the Court recognizes that "not infrequently, the hunter devotes more time to the chase than the quarry," *see Seabrook v. Postal Financial Services, Inc.*, 527 F.Supp. 1006, 1009 (S.D.N.Y.1981), it nevertheless rejects Defendant's request to cap Plaintiff's attorneys' fees at $10,000, the fee amount of opposing counsel in this case. Nonetheless, the Court is deeply troubled by the amount of time claimed and billed by Plaintiff's counsel. It finds that this is a case in which the quarry is not worth all of the chase it was granted and that the fees generated thereby are in substantial part unreasonable. The Court concludes that a downward adjustment in the legal fees is appropriate.[6]

■ Because the Court finds the number of other attorneys and paralegals, and hence, the number of hours, involved in this case to be unacceptably inflated,[7] it will not allow for the direct reimbursement of those billed hours in the full amount sought by Plaintiff's counsel. Instead, the Court will allow for the attorneys' fees of the principal working attorney, Alexandra Treadway, based on several adjustments. First, it will deduct her fees related to Defendants' Counterclaim in the amount of

---

4. Among the other eight associates, they provided a total of 40.7 hours. Among the partners, they provided a total of 19.4 hours, 12.6 of which Attorney Horton provided, apparently as the supervising partner on the case. Among the five paralegals, they billed a total of 92.8 hours. The Court believes this case was treated by members of the Plaintiff's law firm as a fortuitous, *en passant* billing opportunity.

5. This Court has previously disallowed charges attributed to paralegals. *See Auburn Police Union v. Tierney*, 762 F.Supp. 3, 5 (D.Me.1991). In *Auburn Police Union*, the Court stated:

This Court does not permit such charges to be the subject of reimbursement or of allowance of counsel fees generally since the Court is of the view that such charges are properly includable in firm overhead. The individuals for whom the charges are made are not fully licensed professionals and much of their time and effort is duplicated by the supervisory and review roles of more experienced, licensed counsel in making use of their work product.

*Id.* The Court there described these nonlicensed personnel as "law clerks" because that was the nomenclature used for them by counsel

in that case. They were, in fact, paralegals. The reasoning of that case applies to the instant case.

6. As a leading treatise on attorneys' fees has noted:

The subjective nature of an equitable determination that the results of litigation do not justify the expenditure of the amount of time actually spent makes it more appropriately a part of the subjective, post-lodestar process, than a part of the objective process of setting the lodestar.

M. Derfner & A. Wolf, *supra*, ¶ 16.02, at 16–13. Similarly, the Court of Appeals for the First Circuit noted in the context of 42 U.S.C. § 1988: "If the time and fee claimed by the prevailing party are out of line, the court may 'shave' either or both." *Wojtkowski v. Cade*, 725 F.2d 127, 130 (1st Cir.1984).

7. For example, the amount of billed attorney time spent in removing this case from state to federal court was gloriously excessive. Similarly, the amount of attorney time spent in drafting summary judgment pleadings that were comprised of boilerplate language, at least in part, was excessive.

$133.[8] Second, it will reduce her hourly rate to $90 on time entries where she has charged either $100 or $110, resulting in a further reduction of $690.[9] Finally, as part of this initial adjustment, the Court will eliminate all of her billing related to the mechanics' liens in the amount of $998.[10] As a result of these three adjustments, the total award of Attorney Treadway's attor-ney's fees will be initially limited to $9,950.50.[11]

■ In addition, in determining a reason-able fee award, the Court will add to Attor-ney Treadway's reimbursable fees the total of the fees of all of the attorneys, including Attorney Treadway, devoted to the me-chanics' liens [12] in the amount of

**8.** Defendant asserts that she is not responsible for attorneys' fees pertaining to her counter-claim. Defendant's Memorandum at 3. The Court finds that the counterclaim is related to · the foreclosure action insofar as it arises from the same factual predicate as Defendant Steeves's affirmative defense, namely, a separate loan agreement that Plaintiff allegedly breached by failing to withhold certain retainage. *See* State Court Pleadings, Exhibit 8, Answer, Af-firmative Defenses and Counterclaim, at 6–7. This relationship, however, is an *insufficient* basis for concluding that Defendant Steeves must pay Plaintiff's attorneys' fees pertaining to its litigation against the counterclaim. The Court finds that attorneys' fees for such litiga-tion are not covered by the Note, which pro-vides for only such fees as arise from litigation of Plaintiff's claim. In a factually similar case, the Maine Law Court affirmed the trial court's awarding of attorneys' fees "that did not include defending against the counterclaim." *Webber Oil Co.*, 551 A.2d at 1377.

The Court similarly concludes here that the award of attorneys' fees should not include Plaintiff's defending against the counterclaim and, therefore, the Court will deduct $133 from Attorney Treadway's attorney's fees. This figure is derived from deducting in full Attorney Treadway's billing entries for the dates of Octo-ber 22, 1990 ($93.50); October 25, 1990 ($8.50); and November 18, 1991 ($22.00). In addition, one-third ($9.00) of her attorney's fee was de-ducted from the entry of July 22, 1991.

**9.** Attorney Treadway's fee rate to Fleet Bank was $90 per hour but, according to her affidavit, her rate was raised to $110 per hour pursuant to *negotiations* between her law firm and the FDIC. *See* Second Supplemental Attorney's Af-fidavit in Response to This Court's Order of February 12, 1992 ("Treadway Affidavit"), ¶ 7. Later, she clarified her affidavit's vague expla-nation by noting that the difference in rates was "due to the fact that in October 1991 Fleet was an ongoing client of the office, while FDIC was a new client and was therefore charged the new billing rate, which went into effect in August, · 1991." Plaintiff's Memorandum at 4. Defen-dant asserts that "[i]f $90 per hour was a reason-able rate for the Law Firm to charge the Bank in connection with her work on the foreclosure action, it would seem clearly unreasonable to · arbitrarily raise her rate 22.2% to $110 per hour just because the FDIC is involved." Memoran-dum in Support of Objection to Plaintiff's Re-quest for Assessment of Attorneys' Fees ("Defen-dant's Memorandum") at 4. Defendant argues that Attorney Treadway's fee rate should be $90 per hour where she has billed at $100 or $110 per hour.

The Court finds that Plaintiff's counsel's ex-planation for the increase in billable rate sets forth no reasonable basis for the enhanced rate. Attorney Treadway fails to provide the Court with any information regarding her years of experience and background as an attorney in order to assess whether her rates are reason-able. The Court finds that the $90 rate is a fair and .reasonable charge for her services as an associate in a local private law firm. Accord-ingly, the Court will uniformly reduce Attorney Treadway's fees to $90 per hour where she has billed at $100 or $110 per hour.

Defendant contends that Attorney Treadway's time entries dated November 19, 20, and 21, 1991 are duplicative. Plaintiff's counsel ex-plained that "[t]hese identical entries are a re-sult of combining billing entries entered on the FDIC's account and Fleet's account. *The time actually spent is accurate, but had been divided* between these two accounts and is now com-bined." Plaintiff's Memorandum at 3. These entries reflect hourly billing rates of both $90 and $110. The Court accepts the representation of Plaintiff's counsel and concludes that the entries do not duplicate charges for the same services. The Court has adjusted these rates so that the allotted hours are billed only at the $90 hourly rate.

**10.** The Court will allocate separately the time devoted to the mechanics' liens.

**11.** The Court finds that approximately $5,500–$6,000 of Attorney Treadway's billed time was allocated to the principal legal task in this case—the summary judgment motion. The re-imbursement for the remainder of her billed time, supplemented by the $998 for the mechan-ics' liens, leaves a reasonable amount for her devotion to other case-related tasks.

**12.** Defendant notes that some of the attorneys' fees were devoted to matters relating to the mechanics' liens of Equity Plumbing and Bay Electric. It asserts that "the defense of Fleet Bank against the claims of the lienors do not relate to the amount due under the Promissory

$1,385.[13] The combination of Attorney Treadway's attorney's fees and mechanics' liens-related fees results in a revised total of $11,335.50

 Lastly, the Court will increase this revised total in attorneys' fees by a 10% administrative adjustment in the amount of $1,133.55 to adjust for the inclusion of a reasonable charge for any other legal work performed by the remaining professional personnel, for a revised fee award of $12,-469.05. The Court finds that this result properly reflects a *reasonable* fee award, taking into account the nature of the case, the difficulty of the issues, the time devotion reasonably necessary to resolution of the issues, the level of professional skill required, the expertise of counsel, and the value of the accomplishment of counsel herein.[14]

## II. INCURRED COSTS

 Although Defendant has not disputed incurred costs totalling $1,788.71, the reimbursable fees related to the mechanics' liens total $1,385.

Note or the foreclosure of the Mortgage and therefore should not be assessed against the Defendant under the terms of the Promissory Note." Defendant's Memorandum at 3.

The Court disagrees. The First Mortgage, to which Defendant Steeves is a party, states in pertinent part:

> ... Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include ... paying reasonable attorneys' fees....

State Court Pleadings, Complaint for Foreclosure by Civil Action ("Plaintiff's Complaint"), Exhibit B, ¶ 7. In the same paragraph, Plaintiff states that Defendant Steeves "will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7." *Id.* The mechanics' liens of the Parties–in–Interest had a potentially adverse impact upon Plaintiff's rights in the mortgaged property. Therefore, any reasonable attorneys' fees arising from such liens are covered under the aforementioned paragraph and must be paid by Defendant. Furthermore, the Parties–in–Interest had to be joined in this action in order for Plaintiff to foreclose the mortgage and collect monies due. *See* 14 M.R.S.A. § 6321 (Supp.1991). Thus, the Court finds that Plaintiff's counsel appropriately billed for attorney time related to litigating the mechanics' liens.

13. The Court based the total reimbursable fees for mechanics' liens' activity upon the billed hours of both Attorney Treadway and other attorneys in the firm. Attorney Treadway had billed for time devoted to the mechanics' liens at both $90 and $110 hourly rates. As a result, the Court adjusted those hours billed at $110 to $90 for the entries of December 14, 1991; January 9, 1992; January 16, 1992; January 21, 1992; and January 28, 1992, which resulted in fees of $468 (at $90 per hour), rather than $572 (at $110 per hour), for those time entries. In addition, Attorney Treadway spent a total of $426 in mechanics' liens' activity (at $90 per hour). Thus, her reimbursable fees for the mechanics' liens total $894. With respect to other attorneys, the fees for mechanics' liens' activity totalled $491. In light of *Auburn Police Union*, the Court did not include a total of $286.50 in paralegal fees for mechanics' liens. Thus, the

14. The Court rejects Defendant's other contentions regarding attorneys' fees. First, with respect to charges related to James L. Swartz, the Promissory Note ("Note") signed and defaulted by Joan Steeves and James Swartz states the following:

> If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note.... The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

State Court Pleadings, Plaintiff's Complaint, Exhibit A, Adjustable Rate Note, ¶ 8. *See also id.,* Exhibit B, Mortgage, ¶ 11. One of the promises made in the Note includes the payment of reasonable attorneys' fees. The Note specifically states:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its reasonable costs and expenses to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees.

Plaintiff's Complaint, Exhibit A, ¶ 8.

Accordingly, the Court finds that Plaintiff's counsel has rightfully charged for legal services related to Counts II and IV of Plaintiff's Complaint.

Second, with respect to the Equity Line of Credit ("Equity Line"), Defendant asserts that because the Equity Line and the Second Mortgage do not appear to contain an attorneys' fee provision, this Court should evenly divide the total amount of the fees between the Note and the Equity Line of Credit. Defendant's Memorandum at 4–5. While acknowledging that the Equity Line contains no attorneys' fees provision, the Court agrees with Plaintiff's observation that no issues in this case were unique to the Equity Line and Second Mortgage. The Court finds that no basis exists for concluding that, in the absence of the Equity Line and Second Mortgage, Plaintiff's counsel's fees would have been less. The Court will not apportion the fees between the Note and Equity Line, and rejects Defendant's request.

Court, in its discretion to determine reasonable attorneys' fees, finds that two of the delineated costs must be modified or disallowed.[15] First, costs totalling $868.85 in photocopies were incurred. Plaintiff's counsel fails to indicate in their record the rate per page for photocopying. As a result, the Court cannot determine whether either the rate or the number of pages is reasonable. *See Timberland Design*, 745 F.Supp. at 789–90. Nonetheless, the Court finds that photocopies totalling $868.85 for a case of this limited magnitude is unreasonable and it will reduce by eighty percent such costs, a reduction totalling $695.08, for a revised total cost for this item of $173.77.

Second, the LEXIS research costs totalling $128.37 should not be billed to Defendant; they should be allocated to firm overhead charges.[16] The Court will deduct $128.37 from the incurred costs. Overall, it will reduce incurred costs in the amount of $823.45, for a revised total amount of $965.26.

Accordingly, it is hereby ORDERED that Defendant reimburse Plaintiff herein in the amount of Twelve Thousand Four Hundred Sixty–Nine Dollars and Five Cents ($12,469.05) for attorneys' fees and in the amount of Nine Hundred Sixty–Five Dollars and Twenty–Six Cents ($965.26) for incurred costs, for a final total of Thirteen Thousand Four Hundred Thirty–Four Dollars and Thirty–One Cents ($13,434.31), representing the *reasonable* allowance for attorneys' fees and costs as set forth hereinabove.

SO *ORDERED*.

---

**15.** With respect to incurred costs, Plaintiff's counsel states the following:

In order to avoid hourly rate increase [sic], this firm has chosen to bill clients separately for all disbursements made during the course of our representation including, for example, long-distance telephone bills, photocopying, and electronic research. It is my belief that this is a common and customary practice among attorneys involved in this type of litigation.

Treadway Affidavit, ¶ 8.

As one court noted, however:

The costs claimed, however, raise certain problems. This is in part because law firms have begun claiming as separate expenses and disbursements certain costs that arguably should be incorporated in firm overhead for which the fee award itself is designed to compensate.

*Timberland Design, Inc. v. FDIC*, 745 F.Supp. 784, 789 (D.Mass.1990), *aff'd*, 932 F.2d 46 (1st Cir.1991).

**16.** As the Court previously noted:

The Court is well aware that it is a somewhat prevalent practice, where the client will permit it, for lawyers to seek reimbursement of the time charges made by WESTLAW for research facilities. The Court, however, is satisfied that this is properly an item attributed to firm overhead. The Court assumes that the actual time of a lawyer utilizing the research computer facility is, in fact, booked at his [or her] normal hourly rate. The Court thinks it inappropriate and unreasonable to permit an overhead item of this type to be recovered in addition to recovery for the time of the lawyer who used the research facility.

*Auburn Police Union*, 762 F.Supp. at 5.