John DeVORE & Vinnie DeVore, Plaintiffs,

v.

**FEDERAL SAVINGS BANK, OF DOVER, NEW HAMPSHIRE,** Defendant,

and

**Chrysler First Financial Services Corporation, Party-in-Interest in the Counterclaim.**

Civ. No. 92–383–P–C.

United States District Court, D. Maine.

May 21, 1993.

Vinnie DeVore and John DeVore, pro se.

Edward Maccoll, Thompson, McNaboe, Ashley and Bull, Portland, ME, for Federal Sav.

William Dunn, Vigue & Dunn, Berwick, ME, for Chrysler.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE COUNTERCLAIM

GENE CARTER, Chief Judge.

Plaintiffs entered into an "Open–End Credit Plan" with Defendant bank under which they could borrow up to $80,000.[1] Their debt was secured by a mortgage on their home. The procedural history of this case has been discussed at length in prior opinions of the Court. (Docket Nos. 46, 28). Now before the Court is Defendant's Motion for Summary Judgment on its counterclaim for foreclosure (Docket No. 31), the only claim remaining for adjudication. Plaintiffs have filed one document including a Motion to Dismiss Defendant's Motion for Summary Judgment, which the Court will treat as an objection under Local Rule 19 to Defendant's motion, and a Motion for Reconsideration of the Court's order of April 7, 1993, 818 F.Supp. 432. (Docket No. 52). The Court will deny Plaintiffs' motions and grant Defendant's motion.

Under Federal Rule of Procedure 56(c), summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Court of Appeals for the First Circuit has recently stated:

> When, as here, the movant-defendant has suggested that competent evidence to prove the case is lacking, the burden devolves upon the nonmovant-plaintiff to "document some factual disagreement sufficient to deflect brevis disposition." . . .
>
> This burden is discharged only if the cited disagreement relates to a genuine issue of material fact. . . . "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." . . . This requirement has sharp teeth: the plaintiff "must present definite, competent evidence to rebut the motion."
> . . .

*Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 793 (1st Cir.1992) (citations omitted).

The following undisputed facts are shown in the record. On June 29, 1988, Plaintiffs John W. DeVore and Vinnie E. DeVore, executed an "Open–End Credit Plan" in the amount of $80,000 in which they are named as the borrowers with an $80,000 line of credit and Defendant is named as the lender. In the loan document, in addition to agreeing to pay back loans advanced under it and finance charges, Plaintiffs agreed to pay costs and reasonable attorney's fees incurred by the bank in legal proceedings to enforce the debt. The Credit Plan document recites that it is secured by a security interest "by way of a separate security agreement, mortgage or other instrument dated June 29, 1988" on property at 20 Clark's Lane, South Berwick, Maine.

■ On June 29, 1988, Plaintiffs also executed a mortgage for property at 20 Clark's

---

1. The introductory sentence to the Court's previous opinion in this case mistakenly recites that Plaintiffs had borrowed $80,000 under the Open–End Credit Plan. The opinion makes clear in the determination of undisputed facts, however, that the Open–End Credit Plan provided Plaintiffs with an $80,000 line of credit.

Lane, South Berwick, Maine. The mortgage stated that it was to secure the repayment of indebtedness evidenced by "the Note," which was defined in the previous paragraph as "the Equity Credit Note and Loan Agreement of near or even date herewith between Borrower and Lender." The mortgage creates a first priority interest in the premises, senior to any interest of any other party and of any party-in-interest. Party-in-Interest Chrysler First Financial Services Corp. has a lien against the property, filed after Defendant's mortgage, in the amount of $10,-652.14.[2]

Plaintiffs have taken advances from Defendant bank against the Open–End Credit Plan in the amount of at least $62,000. These advances are evidenced by true copies of checks drawn on the credit plan. The mortgage held by Defendant is in default for nonpayment by Plaintiffs of the monthly payments of August, September, and October, 1992, and for their failure to pay real estate taxes on the mortgaged property. Defendant made demand upon Plaintiffs for repayment of all outstanding amounts. As of December 25, 1992, Plaintiffs owed to Defendant the total amount of $69,487.06.

Under Maine's foreclosure statute, 14 M.R.S.A. § 6322,

the Court shall determine foreclosure of a mortgage on the basis of (1) whether there has been a breach of condition of the mortgage; (2) the amount due thereon, including reasonable attorney's fees and court costs; and (3) the order of priority and the amount due, if any, to other parties that may appear.

*Federal Deposit Insurance Corp. v. Bandon Assoc.*, 780 F.Supp. 60, 63 (D.Me.1991). Here, the record shows without factual dispute that Plaintiffs have breached a condition of the mortgage held by Defendant, that they owe Defendant $69,487.06 plus interest from December 25, 1992, and reasonable attorney's fees and costs, and that the mortgage is prior to any other liens on the mortgaged property. Defendant is, therefore, entitled to foreclosure under the Maine statute.

■ In their memorandum and statement of material facts, Plaintiffs make numerous arguments, some of which the Court has addressed in its decisions on prior motions.[3] First, they argue that the Court cannot grant

---

**2.** Plaintiffs state that they have a common law lien on the property they own which is prior to the bank's mortgage. The so-called lien, which is reproduced in Plaintiffs' supplemental answer to the counterclaim (Docket No. 18), is granted by Plaintiffs to Plaintiffs as a "tender of amends." Although the "lien" cites numerous cases supposedly supporting the principle that it supersedes mortgages and equity liens, the cases are inapposite. Plaintiffs have suggested no legal basis for the type of lien they have tried to impose, and the Court can find no legal basis for it. Plaintiffs cannot create a lien merely by *ipse dixit* in an attempt to defeat other interests asserted against their property. Their representation concerning the existence of a common law lien in their favor is not the definite, competent evidence required to rebut Defendant's averral that its mortgage lien is prior to any others. Moreover, even if Plaintiffs had a lien, it was recorded on September 21, 1992, in the York County Registry of Deeds in Book 6255, four years after Defendant's lien was recorded in the same registry in Book 4762, and after Party-in-Interest's lien was recorded in York Registry Book 5681. Plaintiffs have not presented any evidence or legal argument to raise a question concerning the priority of Defendant's mortgage.

**3.** The Court will not revisit Plaintiffs' argument that Federal Reserve notes have no value and

that the Open–End Credit Plan is not the note contemplated by the mortgage. The Court notes, however, that since the time it issued its prior opinion on Plaintiff's Motion for Summary Judgment, Defendant has submitted an affidavit of its Vice–President, John Turgeon (Docket No. 51). The affidavit states that on June 29, 1988, when both the Open End–Credit Plan and the Mortgage were executed, "[i]t was specifically understood and agreed by the DeVores and, on behalf of the Bank, by me that the Mortgage secured the debt evidenced by the Plan."

Plaintiffs say that there is a genuine issue of material fact generated by Mr. Turgeon's averral that they asked to see the original Open–End Credit Plan and he showed it to them and copied it for them. They aver that they never asked to see the plan, but instead asked to see the original note. This discrepancy does not raise a genuine issue of material fact because, as the Court explained in its previous opinion, there is no question that the Open–End Credit Plan is the debt instrument referred to as the note in the mortgage.

Plaintiffs also argue that they are entitled to cross-examine Mr. Turgeon. In order for cross-examination to be appropriate, however, Plaintiffs must come forward at this stage with evidence showing a genuine issue of material fact requiring trial. They have failed to do so.

summary judgment because under 14 M.R.S.A. § 6322, it must "hear" the case before granting a foreclosure. Section 6322 does indeed state that the determinations set forth above shall be made "[a]fter hearing." Plaintiffs, however, misunderstand the meaning of the statute's requirement of a hearing.

The Law Court has recently demonstrated that express language in statutes or rules mandating "hearings" does not always require the type of personal, oral presentation which Plaintiffs seek here. For example, in *Mahaney v. State*, 610 A.2d 738, 741 (Me. 1992), the Law Court held that although the parole statute required the parole board "to afford the committed offender a hearing" before denying parole, the hearing requirement did not require that the offender be allowed to appear personally. Similarly, in *State v. Walker*, 510 A.2d 1064, 1067 (Me. 1986), the Law Court held that Maine Criminal Rule 33's language that "[t]he court shall conduct a hearing" did not require a hearing, but provided the court with discretionary authority to hold one if necessary. In both instances, the Law Court examined the purpose of the rule or statute to determine what was meant by the hearing requirement. In this case, it seems clear that the Legislature intended that no person be deprived of his or her property without a court having the opportunity to consider arguments concerning whether there has actually been a breach of condition and how much money is due. There appears no reason why a hearing on the papers would not be adequate to fulfill this purpose.

■ Maine law shows that actions for foreclosure may be decided by summary judgment. *See, e.g., Maine Savings Bank v. Karter*, 475 A.2d 1149 (Me.1984); *Farrell v. Theriault*, 464 A.2d 188 (Me.1983). Maine law also contemplates that motions for summary judgment may be decided without oral argument if the parties have been notified and given an opportunity to present to the court materials pertinent to the motion as well as written arguments. *See Spickler v. Carzis*, 349 A.2d 173, 174–75 (Me.1975). The written arguments function as an alternative to the oral argument. *Id.* The same rationale permits summary judgment motions in the federal courts to be decided without oral argument. *Bratt v. International Business Machines Corp.*, 785 F.2d 352, 363 (1st Cir. 1986); *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.* 754 F.2d 404, 411 (1st Cir. 1985). In this case, Local Rule 19(f) provides notice to all litigants that summary judgment motions will be decided without oral argument unless otherwise ordered by the Court. Plaintiffs have submitted lengthy briefs and affidavits in support of their objection to Defendant's motion for summary judgment. The Court's consideration of the written submissions of each party provides a hearing in the sense that the Court has had the opportunity to consider the arguments raised on each side.

In their memorandum, Plaintiffs deny that they "knowingly made a mortgage to secure a debt evidenced by the 'Plan.'" Plaintiffs' Memorandum in Support of Objection (Docket No. 53), at 7. The Court has previously determined that the mortgage at issue here secures the debt evidenced by the plan. Plaintiffs have come forward with no evidence that they did not execute the Open–End Credit Plan knowingly.[4] Plaintiffs also deny that any debt is evidenced by the plan. The clear language of the Plan, however, includes a promise by Plaintiffs, the signatories of the agreement, "to pay any amounts you owe under this agreement."

■ Plaintiffs argue further that the bank has produced no admissible evidence to support its claim that they owe it money. The Open–End Credit Plan shows that a loan is requested under the plan by using a special check provided for that purpose. The record contains copies of three Open–End Credit Plan checks signed by Plaintiff John W. DeVore, in the total amount of $62,000. Mr.

4. Plaintiffs argue that they could not "knowingly" execute a commercial transaction involving the conveyance of federal reserve notes when the value of federal reserve notes is unknown. Plaintiffs' Memorandum in Support of Objection (Docket No. 53), at 5 The Court has previously rejected Plaintiffs' arguments based on the value of federal reserve notes. *See* Order on Defendant's Motion to Dismiss (Docket No. 12), (Jan. 20, 1993). They have failed to present any evidence that they did not knowingly sign the loan documents or checks.

Turgeon has stated in his affidavit that the bank honored the checks, paying the De-Vores the $62,000. As described above, the plan contains a promise by Plaintiffs to repay such amounts.

■ Plaintiffs argue, however, that the copies of checks drawn by them on the open-end credit plan are inadmissible and cannot support the motion for summary judgment. Mr. Turgeon's affidavit states that the record copies are true copies of the checks honored by the bank. Federal Rule of Evidence 1003 permits the admission of a duplicate document unless a genuine question is raised as to the authenticity of the original or it would be unfair to admit the duplicate. Plaintiffs try to generate an issue as to the authenticity of the checks by stating, in their memorandum, that they did not knowingly sign any such checks. They have not averred in their affidavits that they did not sign the checks or in any way "documented a factual disagreement" concerning the authenticity of their signatures, as is required to avoid *brevis* disposition. *Wynne*, 976 F.2d at 793.[5]

By affidavit Plaintiff John DeVore avers that he has not received "Lawful Money of Value" pursuant to the open end credit plan. Both Plaintiffs also aver that they have not received the amount of eighty thousand dollars "in Money of Value or in Money of No Value" from Defendant under the plan or any other instrument. Again Plaintiffs fail to generate a genuine issue of material fact. Based on Plaintiffs' memorandum, the Court understands Mr. DeVore's averral to be that he did not receive lawful money of value because federal reserve notes are not lawful money of value.[6] The Court has previously rejected this premise. Defendant by its affidavit has shown that Plaintiffs received advances of $62,000 in accordance with the credit plan. Plaintiffs' averrals that they did not receive $80,000 do not call into question Defendant's factual representation that they received $62,000.

■ Finally, Plaintiffs argue that they are entitled either to summary judgment or to a jury trial. The Court has previously denied Plaintiffs' Motion for Summary Judgment on the Counterclaim, and the statutory action for foreclosure is equitable, thus not meriting a jury trial. *Morris v. Resolution Trust Corp.*, 622 A.2d 708 (Me.1993). In any event no trial is appropriate in this case. With no genuine issue of material fact remaining, Defendant has shown that Plaintiffs have breached the conditions of their mortgage, that as of December 25, 1992, they owed Defendant $69,487.06, and that the mortgage is prior to other existing liens. Defendant is, therefore, entitled to summary judgment on its action for foreclosure. Accordingly, it is *ORDERED* that Plaintiffs' Motion for Reconsideration be, and it is hereby, *DENIED*. It is *FURTHER ORDERED* that Defendant's Motion for Summary Judgment on its counterclaim for foreclosure be, and it is hereby, *GRANTED*. It is hereby *ADJUDGED* that Plaintiffs owe Defendant $69,-487.06, plus interest accrued since December 25, 1992, plus costs of collection including reasonable attorney's fees.

By June 10, 1993, in accordance with the foregoing order, Defendant's counsel shall submit a proposed order specifying the amount of principal, interest charges, and costs and attorney's fees due it on the obligations herein adjudicated. Counsel shall confer with Plaintiffs forthwith and attempt to agree upon collection costs, including *reasonable* attorney's fees, *see Fleet Bank of Maine v. Steeves*, 793 F.Supp. 18 (D.Me. 1992), and by June 10, 1992, shall file written submissions on any issues generated in this regard or an agreed upon resolution of such issues. In the absence of agreement, the Court will resolve any such issues upon the written submissions. The Order of Fore-

---

**5.** Plaintiffs also argue that "as a matter of precaution" they have issued to the Defendant a "Notice of Revocation of Signature, Power of Attorney and Consent" from the checks and other documents held by Defendants, and thus Defendant cannot establish a claim based on the checks. Even if such a revocation were in evidence, it would not serve to alter the obligations entered into by Plaintiffs when they initially signed the loan documents and checks.

**6.** The averral, in marked contrast to the averral in his other affidavit, does not state that Mr. DeVore did not receive either money of value or money of no value under the plan.

closure will enter upon resolution of these remaining matters.

SO ORDERED.