TIMBERLAND DESIGN, INC. and William C. Barnsley, Plaintiffs, Appellants,

v.

FIRST SERVICE BANK FOR SAVINGS, Defendant, Appellee.

No. 90–1862.

United States Court of Appeals, First Circuit.

Heard Jan. 11, 1991.

Decided May 3, 1991.

Robert S. Potters with whom Henry A. Brown, and Potters & Brown, Boston, Mass., were on brief, for plaintiffs, appellants.

J. Scott Watson with whom Ann S. DuRoss, Joan E. Smiley, Robert D. McGillicuddy, Washington, D.C., William L. Patton, Robert J. Stillman, and Ropes & Gray, Boston, Mass., were on brief, for defendant, appellee.

Before BREYER, Chief Judge, CAMPBELL, Circuit Judge, and CAFFREY,* Senior District Judge.

PER CURIAM.

This is an appeal by the plaintiffs, Timberland Design Inc. and William C. Barnsley,[1] from an order of the United States District Court for the District of Massachusetts granting summary judgment in favor of the defendant, the Federal Deposit Insurance Corporation ("FDIC"), which was acting as liquidating agent for the First Service Bank for Savings ("First Service"). The dispute arose out of the following facts. On December 7, 1987, First Service, a Massachusetts Savings Bank, loaned Timberland four million dollars to develop seven hundred and fifty acres of land in southern New Hampshire. Timberland executed the note, which was guaranteed by Barnsley, Timberland's principal. Timberland contends that First Service orally agreed to lend it an additional sum of $3,900,000.00 in the future. That agreement was never recorded in First Service's files or records.

It is further alleged that, throughout June and July of 1988, First Service orally assured Timberland that the loan would be made. This second loan, which the plaintiffs term the "second phase," never was made, although First Service did lend an additional $500,000.00 to Timberland in May, 1988. Finally, in September, 1988, First Service informed Timberland that it intended to foreclose on the mortgaged property. Timberland filed its lender liability complaint on March 29, 1990. The complaint, which was served on First Service on March 30, alleged the following claims: deceit; negligent misrepresentation; breach of fiduciary duty; breach of contract; and violation of Mass.Gen.L. ch. 93A. On March 31, 1989, the Commissioner of Banks for Massachusetts appointed the FDIC as receiver of the assets and liabilities of First Service. The FDIC moved for summary judgment based on the doctrine of estoppel established in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Alternatively, the FDIC argued that summary judgment in its favor was warranted based on the retroactive application of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), the 1989 amendment to 12 U.S.C. § 1823(e), which both parties agree would extinguish Timberland's claims, if applicable. The district court granted summary judgment in favor of the FDIC on all five counts and on the FDIC's counterclaims for payment of

---

* Of the District of Massachusetts, sitting by designation.

1. For the sake of convenience, the plaintiffs will be referred to collectively as "Timberland."

the note, finding Timberland's action and defenses to be barred by the doctrine established in *D'Oench.* *See Timberland Design Inc. & William C. Barnsley v. FDIC,* 745 F.Supp. 784, 787 (D.Mass.1990).

## I.

We turn first to the district court's application of the *D'Oench* doctrine. Some brief background concerning the FDIC's functions when a bank fails is necessary in light of the arguments raised by Timberland. The FDIC has two separate roles. As receiver, the FDIC manages the assets of the failed bank on behalf of the bank's creditors and shareholders. In its corporate capacity, the FDIC is responsible for insuring the failed bank's deposits. Although there are many options available to the FDIC when a bank fails, these options generally fall within two categories of approaches, either liquidation or purchase and assumption. *See FDIC v. La Rambla Shopping Center, Inc.,* 791 F.2d 215, 218 (1st Cir.1986); *Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The liquidation option is the easiest method, but carries with it two major disadvantages. First, the closing of the bank weakens confidence in the banking system. Second, there is often substantial delay in returning funds to depositors. *Gunter,* 674 F.2d at 865.

The preferred option when a bank fails, therefore, is the purchase and assumption option. *La Rambla Shopping Center, Inc.,* 791 F.2d at 218. Under this arrangement, the FDIC, in its capacity as receiver, sells the bank's healthy assets to the purchasing bank in exchange for the purchasing bank's promise to pay the failed bank's depositors. *Id.* In addition, as receiver, the FDIC sells the "bad" assets to itself acting in its corporate capacity. *Id.* With the money it receives, the FDIC-receiver then pays the purchasing bank enough money to make up the difference between what it must pay out to the failed bank's depositors, and what the purchasing bank was willing to pay for the good assets that it purchased. *Id.* The FDIC acting in its corporate capacity then tries to collect on the bad assets to minimize the loss to the insurance fund. Generally, the purchase

and assumption must be executed in great haste, often overnight.

With this in mind, we now turn to the district court's application of the *D'Oench* doctrine. *D'Oench* involved a situation where the defendant executed a note payable to the bank with the understanding that the note would never be called for payment. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. at 454, 62 S.Ct. at 678. The FDIC insured the bank in 1934, and acquired the notes at issue in its corporate capacity through a purchase and assumption in 1938 after the bank failed. *Id.* The FDIC then made a demand for payment, at which time it learned of the agreement that the notes would never have to be repaid. The Supreme Court refused to allow the defendant to defend against the FDIC's action on the basis of this secret agreement. *Id.* at 461, 62 S.Ct. at 681. In enunciating the new estoppel doctrine, the Court set forth the following test:

> The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled.

*Id.* at 460, 62 S.Ct. at 681.

Significantly, the *D'Oench* doctrine does not require a showing that a party had the intent to defraud. *FDIC v. P.L.M. Int'l, Inc.,* 834 F.2d 248, 252–53 (1st Cir.1987). Rather, the doctrine prohibits all secret agreements that tend to make the FDIC susceptible to fraudulent arrangements. *Id.* at 253. In requiring merely that the borrower "lends himself to a scheme or arrangement," the *"D'Oench, Duhme* doctrine thus favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can." *Bell & Murphy & Assoc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 754 (5th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *FDIC v. McCullough,* 911 F.2d 593, 600

(11th Cir.) (quoting *Bell & Murphy & Assoc.*, 894 F.2d at 754), *reh'g denied*, 920 F.2d 13 (1990). Thus, the *D'Oench* doctrine applies where the only element of fault on the part of the borrower was his or her failure to reduce the agreement to writing. *Bell & Murphy & Assoc.*, 894 F.2d at 754.

 *D'Oench* itself addressed the situation where the FDIC was acting in its corporate capacity. Nonetheless, since the Supreme Court first enunciated the *D'Oench* doctrine, courts have consistently applied the doctrine to those situations where the FDIC was acting in its capacity as receiver. *See, e.g., McCullough*, 911 F.2d at 599; *Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989); *FDIC v. First Nat'l Fin. Co.*, 587 F.2d 1009, 1012 (9th Cir.1978); *FDIC v. McClanahan*, 795 F.2d 512 at 516 (5th Cir.1986); *see also Federal Sav. & Loan Ins. Corp. v. Two Rivers Assoc., Inc.*, 880 F.2d 1267, 1277 (11th Cir.1989) (*D'Oench* applied to FSLIC acting as receiver). Recognizing the lack of support for its main argument below that the *D'Oench* doctrine does not apply to the FDIC when acting in its capacity as receiver, Timberland instead argues on appeal that *D'Oench* merely estops a borrower from raising a secret agreement as a defense to an FDIC action. Thus, according to Timberland's argument, the doctrine in no way bars a borrower's affirmative claims against the FDIC. Timberland's invitation to this court to distinguish between affirmative claims on one hand, and defenses, on the other, must be rejected. To distinguish between affirmative claims and defenses for purposes of applying the *D'Oench* doctrine would reduce the protection offered by the doctrine to a nullity. As stated by one court:

"To allow a claim *against* the FDIC asserting the very grounds that could not be used as a defense to a claim *by* the FDIC is to let technicality stand in the way of principle. Moreover, the effect of such an approach would be to reduce actions Congress has allowed the FDIC to pursue to nullities since defendants

could counterclaim and recover what they lost."

*Hall v. FDIC*, 920 F.2d 334, 340 (6th Cir. 1990) (quoting *Beighley v. FDIC*, 676 F.Supp. 130, 132 (N.D.Tex.1987), *aff'd*, 868 F.2d 776 (5th Cir.1989)). Realizing that such a distinction would elevate form over substance, most courts have recognized that *D'Oench* operates to bar affirmative claims as well as defenses which are premised upon secret agreements. *See, e.g., Bowen v. FDIC*, 915 F.2d 1013, 1015 (5th Cir.1990); *Kilpatrick v. Riddle*, 907 F.2d 1523, 1528 (5th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991); *FSLIC v. Gemini Management*, 921 F.2d 241, 244 (9th Cir.1990); *Hall*, 920 F.2d at 340; *Two Rivers Assoc.*, 880 F.2d at 1277; *Castleglen, Inc. v. Commonwealth Sav. Assoc.*, 728 F.Supp. 656, 664 (D.Utah 1989).

Timberland relies on *Grubb v. FDIC* to support its contention that *D'Oench* does not bar its affirmative claims. *See* 868 F.2d 1151 (10th Cir.1989). In *Grubb*, the district court entered judgment against the defendant bank after a jury trial. *Id.* at 1153. After filing the appeal, the bank closed. The FDIC was appointed receiver of the failed bank, and was substituted as appellant. *Id.* at 1153 n. 1. The Tenth Circuit first held that 12 U.S.C. § 1823(e), *D'Oench*'s statutory counterpart, did not shield the FDIC from suit, because the pre-existing judgment voided the notes before the FDIC was even appointed receiver. *Id.* at 1159. Secondly, the court held that the FDIC could not rely on *D'Oench* to bar the plaintiff's affirmative claims of fraud. *Id.* Despite the language in *Grubb* regarding affirmative claims, the case is clearly distinguishable in light of the fact that the district court in *Grubb* had rendered judgment before the FDIC took over as receiver. In fact, at least one district court within the Tenth Circuit has distinguished *Grubb* on these grounds, noting that to interpret *Grubb* as barring defenses, but allowing affirmative claims, would run counter to the weight of authority. *See Castleglen*, 728 F.Supp. at 664.[2] We

---

**2.** Significantly, the Tenth Circuit itself, in a case subsequent to *Grubb*, applied *D'Oench* to bar a borrower's claim to a setoff on the basis of

fraud, against the FDIC's collection on a note. *See Mainland Sav. Ass'n v. Riverfront Assoc., Ltd.*, 872 F.2d 955, 956 (10th Cir.) (per curiam),

agree, and conclude that *D'Oench* protects the FDIC from Timberland's affirmative claims which are based upon an alleged oral agreement to lend money in the future.[3]

This conclusion is not altered by the fact that some of the claims asserted by Timberland sound in tort. The district court correctly held that *D'Oench* bars defenses and affirmative claims whether cloaked in terms of contract or tort, as long as those claims arise out of an alleged secret agreement. *Timberland Design, Inc.*, 745 F.Supp. at 789. To allow the plaintiff to assert tort claims based on the oral agreement would circumvent the very policy behind *D'Oench*, and therefore, *D'Oench* is generally said to apply to tort claims. *See Beighley*, 868 F.2d at 784.[4] Although not decided under *D'Oench*, the Supreme Court's decision in *Langley v. FDIC* supports this conclusion by holding that § 1823(e) bars fraud claims that are premised upon an oral agreement. 484 U.S. 86, 93, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987). We therefore conclude that *D'Oench* applies with equal force to tort claims arising out of secret agreements.[5]

Timberland next argues that the district court should not have applied *D'Oench* to the present situation because the FDIC had actual knowledge of the oral agreement to loan 3.9 million dollars by virtue of Timberland's suit, which was filed two days before the FDIC was appointed as receiver. We reject this argument. The proper focus under *D'Oench* is whether the

agreement, at the time it was entered into, would tend to mislead the public authority. *D'Oench, Duhme & Co.*, 315 U.S. at 460, 62 S.Ct. at 681. Such is the case due to the purpose of *D'Oench* of allowing the FDIC to rely on the bank's records not only when taking over a failed bank, but also when insuring it. *Two Rivers Assoc.*, 880 F.2d at 1275. Thus, several courts have noted that the FDIC's actual knowledge of the agreement at the time it acquires the note is irrelevant. *McCullough*, 911 F.2d at 600 n. 5; *Two Rivers Assoc.*, 880 F.2d at 1275 n. 12; *First State Bank v. City & County Bank*, 872 F.2d 707, 717 (6th Cir.1989). As explained in a case from the Sixth Circuit:

> The protection afforded by the *D'Oench* estoppel doctrine would be of no value if the parties could avoid its effect by making the FDIC aware of a secret agreement before a bank failure. Holding otherwise would encourage less than truthful disclosure and would encourage last-minute lobbying regarding any inaccuracies by notifying the FDIC of those inaccuracies only when the bank appears to be on the brink of failure.

*First State Bank*, 872 F.2d at 717. The wisdom of the above-quoted portion of the *First State Bank* opinion is readily apparent in the present case, where Timberland would have this court find *D'Oench* inapplicable simply because Timberland filed its suit two days before the FDIC took over First Service. Thus, we reject Timberland's argument that *D'Oench* should not

---

3. This court uncovered only one other case that could charitably be said to support the proposition that *D'Oench* does not bar affirmative claims against the FDIC. In *Vernon v. Resolution Trust Corp.*, the Eleventh Circuit held that *D'Oench* did not bar the plaintiffs' shareholder claims against the FDIC alleging certain tortious claims, including a claim for common law fraud. 907 F.2d 1101, 1108 (11th Cir.1990). In doing so, however, the court distinguished the facts from nearly all other *D'Oench* cases, including the one at bar, stating that the shareholder plaintiffs in *Vernon* were not " 'obligees trying to avoid their commitment on an asset which the [assuming bank] acquired in a purchase and assumption agreement.' " *Tuxedo*

*cert. denied,* — U.S. —, 110 S.Ct. 235, 107 L.Ed.2d 186 (1989).

*Beach Club Corp. v. City Fed. Sav. Bank*, 749 F.Supp. 635, 646 (D.N.J.1990) (quoting *Vernon*, 907 F.2d at 1107).

4. We reject the court's suggestion in *Astrup v. Midwest Fed. Sav. Bank*, that *D'Oench* affords no protection against tort claims. *See* 886 F.2d 1057, 1059 (8th Cir.1989). To the extent that *Astrup* supports the contention that *D'Oench* does not bar affirmative claims sounding in tort, we reject it as contrary to *D'Oench*'s policy of shielding the FDIC from secret agreements.

5. Having determined that the district court properly applied *D'Oench* to bar Timberland's defenses as well as its affirmative claims, we need not address the question of the retroactive application of FIRREA.

apply because the FDIC had actual knowledge of the agreement.

■ Timberland's remaining argument, raised for the first time on appeal, is that *D'Oench* was preempted by the Federal Deposit Insurance Act of 1950, Pub.L. No. 81–797, § 13(e), 64 Stat. 873, which is codified at 12 U.S.C. § 1811, et seq. It is clearly established that arguments not raised at the district court level will not be considered on appeal. *Denny v. Westfield State College*, 880 F.2d 1465, 1473 (1st Cir.1989). Although this rule has its exceptions, these are allowed only " 'in horrendous cases where a gross miscarriage of justice would occur.' " *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir. 1979) (quoting *Newark Morning Ledger Co. v. United States*, 539 F.2d 929, 932 (3d Cir.1976)). The case at hand is not such an exceptional one as to justify deviating from the well-established rule. Timberland clearly had the opportunity to raise the preemption issue below, and cannot now raise it for the first time.

In sum, and for all of the reasons stated above, the district court did not err in granting summary judgment in favor of the FDIC on all five counts and on the FDIC's counterclaims for payment of the note. Accordingly, the district court's judgment is hereby *affirmed*. *Costs to appellee.*