**Arthur E. CUTLER, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, the One Bancorp, Vincent E. Furey, Jr., Richard Roe and John Doe, Defendants.**

**Civ. No. 91–0073–P–C.**

United States District Court,
D. Maine.

June 9, 1992.

See also 781 F.Supp. 816, 782 F.Supp. 9.

Arthur Cutler, pro se.

Andrew M. Horton, Verrill & Dana, Portland, Me., for defendants.

GENE CARTER, Chief Judge.

## ORDER GRANTING DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

This case involves a power-of-sale foreclosure auction conducted by Maine Savings Bank ("MSB") on November 18, 1990, at which time Plaintiff Arthur E. Cutler ("Plaintiff") was the high bidder at the foreclosure sale and signed a Purchase and Sale Agreement ("PSA"). On December 14, 1990, Plaintiff filed his Complaint against MSB and other named Defendants seeking, *inter alia,* an injunction forcing the FDIC to preserve his deposit and prohibiting conveyance of the property to any third parties and a court order forcing the FDIC to convey the property to him by a quitclaim deed.[1]

On April 16, 1992, Defendant FDIC filed a Motion for Summary Judgment.

### I. *Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court of Appeals for the First Circuit has articulated the legal standard to be applied in deciding motions for summary judgment:

---

1. Plaintiff subsequently amended his original Complaint on December 31, 1990; August 9, 1991; and April 29, 1992. The Third Amended Complaint, dated April 29, 1992, addressed only Count V of Plaintiff's Complaint, which was dismissed by the Court in an Order dated April 29, 1992. Therefore, Plaintiff's Second Amended Complaint, dated August 9, 1991, is the most recent Complaint; the Motion is based on that Complaint. Heretofore, the Court will refer to the Second Amended Complaint as "Complaint."

[T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be entered.

*Anderson*, 477 U.S. at 249–59, 106 S.Ct. at 2510–11.

*Brennan v. Hendrigan*, 888 F.2d 189, 191–92 (1st Cir.1989).

■ Here, Plaintiff responded to Defendant FDIC's Motion on May 4, 1992. Plaintiff, however, failed to file any opposing affidavits and a statement of material facts, as required by Local Rule 19(b)(2) of this Court. Under Local Rule 19(b)(2), all material facts set forth in the moving party's statement of facts are deemed admitted unless controverted in the opposing party's statement of material facts. When the party opposing summary judgment fails to file a statement of material facts, the party has waived objection to the moving party's statement of material facts to the extent that the movant's statement is supported by appropriate record citations. *See Maillett v. Phinney*, 755 F.Supp. 463, 464 (D.Me.1991); *McDermott v. Lehman*, 594 F.Supp. 1315, 1321 (D.Me.1984).

It is well-established law in this district, however, that Federal Rule of Civil Procedure 56 requires the Court to examine the merits of a motion for summary judgment even though a nonmoving party fails to object as required by Local Rule 19(c). *See New Maine National Bank v. Reef*, 765 F.Supp. 27, 28 (D.Me.1991); *Lehman*, 594 F.Supp. at 1320.

In this case, the material facts set forth and supported by Defendants and deemed consented to by Plaintiff are as follows.

## II. *Facts*

On November 18, 1990, Plaintiff was the high bidder at a foreclosure auction pursuant to a power of sale contained in a mortgage between Kfoury–Weinschenk, a Maine corporation and Defendant, FDIC's predecessor in interest and former sole Defendant, MSB. The property auctioned consisted of a large parcel of land that had been subdivided into numerous lots, most of which had been released from the operation of MSB's Mortgage prior to the auction. Each lot was separately offered for sale at the auction.

Prior to and at the auction, prospective bidders were informed that the Terms of Sale, Purchase and Sale Agreement ("PSA"), and other documents were subject to change up to and at the auction, and that bidders must rely solely on the Terms of Sale, Notice of Sale, the PSA, and other documents distributed on the date of the sale and/or matters of record. During the time that MSB held a mortgage on the property, the property became encumbered perpetually by certain restrictive covenants benefiting and restricting all lot owners of the Elizabeth Farms subdivision. Prior to and as of the Foreclosure Auction, MSB

was subject to those restrictions, as are all future owners of the property. All of these encumbrances were disclosed and referenced in the published Notice of Mortgagee's Foreclosure Sale, the PSA, and other documents distributed to prospective buyers prior to and at the foreclosure sale.

At the auction held on November 18, 1990, the public was advised that MSB, its agents or attorneys made no representations concerning the use, value, or condition of the property, other than matters of record or those matters specifically set forth in the PSA, Terms of Sale, Notice of Foreclosure Sale, and other relevant documents distributed to prospective buyers prior to and at the auction. As of the date of the sale, MSB asserted, in response to a question from Plaintiff, that it intended to convey no more and no less than its ownership interest in the property.

Plaintiff was the high bidder on lot 17 (the "Property"). Following the auction of the remaining lots, Plaintiff signed a PSA with MSB, and tendered a $5,000 deposit required by the PSA to MSB's agent. The PSA provided, *inter alia*, that "the closing shall take place on or before December 14, 1990 provided the buyer and seller may agree in writing to extend the date for closing." It also provided that "if Buyer fails to close as agreed, then Seller shall, at its option, retain the Buyer's deposit as liquidated damages and/or pursue other damages at law or equity including reasonable attorneys' fees. Seller may also, at its option, receive an assignment of the buyers rights hereunder."

At Plaintiff's insistence, he was permitted to inscribe the following handwritten statement as an addendum to paragraph 4 of the PSA:

> It being the intention of Seller [MSB] to convey no interest in the subject property greater or less than that of Seller. It is Seller's intention to convey all of its interest in the subject property, as of November 18, 1990.

The PSA, including Plaintiff's handwritten notation, was not approved by the board of directors of MSB or its Loan Committee. Furthermore, there is no official record of

MSB, as that term is defined by 12 U.S.C. section 1823(e)(3), with respect to the PSA.

Several days after execution of the PSA, Plaintiff requested changes to the form deed attached to the PSA. Specifically, Plaintiff demanded that MSB delete reference to several restrictive covenants encumbering the Property. The only language that Defendant agreed to remove from the deed was a reference relating to the name change of Kfoury–Weinschenk Company to Ric Weinschenk & Company. By letter dated November 30, 1990, MSB informed Plaintiff that it would deliver a deed which included the encumbrances set forth in the draft deed attached to the PSA. The letter reiterated that it was MSB's intention to convey nothing more and nothing less than its interest in the Property. MSB was ready, willing and able to fully comply with the terms of the PSA and convey a deed for the Property in the form of the specimen deed attached to the PSA as exhibit A on December 14, 1990. The deed MSB proposed to give to Plaintiff would have operated to convey all of MSB's interest in the subject property. Plaintiff, however, refused to close on December 14, 1990, and has, therefore, breached the terms of the PSA that he executed on November 18, 1990. Plaintiff has refused to accept a deed for the Property in the form agreed to, but rather, has requested a deed in a form that MSB did not agree to convey, and which MSB did not and does not have the power to convey.

### III. *Discussion*

#### A.

■ Under Count I, Plaintiff seeks injunctive relief restraining FDIC from taking any action to forfeit his deposit or to offer for sale or transfer the title of Lot 17. Complaint, ¶ 19. Further, Plaintiff seeks injunctive relief obligating the FDIC to transfer Lot 17 to him by Quit–Claim Deed Without Covenant. *Id.*

The FDIC does not hold the title to this property. Fleet Bank is the present record owner of Lot 17 of the Elizabeth Farms—Cole Field subdivision, based on the Purchase and Assumption Agreement entered into between the FDIC and Fleet Bank in

February, 1991. *See* Affidavit of William J. Mann, ¶¶ 8–9. The FDIC cannot transfer title to property to which it does not hold title. Accordingly, Plaintiff's request for injunctive relief under Count I directed against the FDIC is inappropriate and, therefore, Count I must be dismissed as a matter of law.

### B.

■ Under Counts II, III, and IV, Plaintiff relies upon certain oral and written agreements as the basis for its allegations that, according to Defendant, are invalid against the FDIC, based on the *D'Oench, Duhme* doctrine and its codification under 12 U.S.C. section 1823(e). The *D'Oench, Duhme* doctrine, a federal common law estoppel doctrine, prohibits borrowers or guarantors from using secret or unrecorded side agreements to thwart the FDIC or its assignees in its collection efforts. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 460, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942). This Court has invoked the doctrine in granting summary judgment in favor of the FDIC or its assignees to prohibit obligors from using unrecorded agreements and representations as a basis for claims or defenses against efforts by the FDIC or its assignees in such collection efforts. *See, e.g., Fleet Bank of Maine v. Steeves*, 785 F.Supp. 209 (D.Me.1992); *Fleet Bank of Maine v. Wilson*, 780 F.Supp. 841, 846 (D.Me.1991); *New Maine National Bank v. Benner*, 774 F.Supp. 36, 40 (D.Me.1991); *Bateman v. F.D.I.C.*, 766 F.Supp. 1194, 1199 (D.Me.1991); *New Maine Natl. Bank v. Seydler*, 765 F.Supp. 770, 773–74 (D.Me.1991).

The *D'Oench, Duhme* doctrine operates to bar affirmative claims as well as defenses that are premised upon side agreements. *See, e.g., Timberland Design, Inc. v. First Service Bank for Savings*, 932 F.2d 46, 49 (1st Cir.1991). Plaintiff erroneously argues that the doctrine can be invoked only where the FDIC is suing on an asset acquired by it and the defendant raises the existence of a secret agreement as a defense. *See* Plaintiff's Memorandum in Support of his Objection to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum") at 2–3. As the First Circuit Court of Appeals noted:

> Timberland [plaintiff] ... argues ... that *D'Oench* merely estops a borrower from raising a secret agreement as a defense to an FDIC action. Thus, according to Timberland's argument, the doctrine in no way bars a borrower's affirmative claims against the FDIC. Timberland's invitation to this court to distinguish between affirmative claims on one hand, and defenses, on the other, must be rejected. To distinguish between affirmative claims and defenses for purposes of applying the *D'Oench* doctrine would reduce the protection offered by the doctrine to a nullity.... Realizing that such a distinction would elevate form over substance, most courts have recognized that *D'Oench* operates to bar affirmative claims as well as defenses which are premised upon secret agreements.

*Timberland Design*, 932 F.2d at 49.

The *D'Oench, Duhme* doctrine is no longer strictly common law. Section 13(e) of the Federal Deposit Insurance Act of 1950 and section 214(a) of FIRREA both incorporated and clarified the doctrine, and applies to an "agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase or *as receiver of any insured depository institution....*" *See* 12 U.S.C. §§ 1821(n)(4)(I), 1823(e) (emphasis added).[2]

■ Here, Plaintiff seeks to use the agreement in question, the PSA, "to dimin-

---

**2.** Under section 1823(e), no such agreement shall be valid against the FDIC unless such agreement:

    1) is in writing;

    2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contempo-

raneously with the acquisition of the asset by the depository institution;

    3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee; and

ish or defeat the interest of the FDIC" in the asset in question, which is Lot 17.[3] The Court finds as a matter of law that the PSA does not meet all four of the requirements of 12 U.S.C. section 1823(e). Specifically, the agreement fails to satisfy the requirement under section 1823(e)(3) because the Board of Directors or the Loan Committee of MSB did not approve the agreement. Moreover, the agreement fails to satisfy section 1823(e)(4) because it was not an official record of MSB. Therefore, Plaintiff's claims against the FDIC under Counts II, III, and IV are barred as a matter of law under the *D'Oench, Duhme* doctrine and section 1823(e).

Accordingly, it is *ORDERED* that Defendant FDIC's Motion for Summary Judgment on Plaintiff's Complaint be, and it is hereby, *GRANTED.*

---

4) has been, continuously, from the time of its execution, an official record of the depository institution.

Agreements not meeting all four requirements set forth under the statute are unenforceable against the FDIC. *See FDIC v. Rivera–Arroyo,* 907 F.2d 1233, 1236 (1st Cir.1990).

The United States Supreme Court has given a very broad definition to the "agreements" that must meet the four requirements of section 1823(e):

Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme* ) or of the truthfulness of warranted fact.

*Langley v. FDIC,* 484 U.S. 86, 92–93, 108 S.Ct. 396, 401–02, 98 L.Ed.2d 340 (1987). The *Langley* Court noted that "[o]ne purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. *Id.* at 91, 108 S.Ct. at 401.

3. Plaintiff interprets narrowly the term "asset" under the *D'Oench, Duhme* doctrine and section 1823(e). He argues that the FDIC cannot invoke the *D'Oench, Duhme* doctrine "to block its liability upon a contractual dispute not involving a loan agreement." Plaintiff's Memorandum at 3. The Court disagrees.

The clear language of section 1823(e) refers to any asset acquired by the FDIC under any of the following conditions: "security for a loan;" "by purchase;" or "receiver[ship] of any insured depository institution." The statute states specifically that "[n]o agreement which tends to diminish or defeat the interest of the Corporation" in such an asset "shall be valid *against the Corporation,"* (emphasis added), unless it meets the statutory criteria. Plaintiff seeks to assert a claim pursuant to his construction of the language of the PSA which could require the FDIC to convey Lot 17 to him by a deed conveying a greater titular interest than that which FDIC asserts that it had in that asset. Hence, he seeks, pursuant to the PSA to "defeat" FDIC's claim as to the extent of its titular interest in the asset. The statutory provision clearly is intended to apply to Lot 17 and the PSA under which Plaintiff claims a title.

Plaintiff's interpretation of the statute fits only *the first* of the three circumstances in which enforcement of agreements against the FDIC is proscribed. The asset in question, Lot 17, may not fit the first condition in that it arguably does not represent "security for a loan." Second, Lot 17 was not purchased by the FDIC. However, the FDIC did originally acquire Lot 17 as an asset when it became the Receiver of MSB. *See* Verified Notice of Removal to the United States District Court for the District of Maine, ¶¶ 3, 5, Exhibit C–3.1. Therefore, the third condition under section 1823(e) has been met.