### FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff, Appellee,

v.

### LONGLEY I REALTY TRUST, et al., Defendants, Appellees,

### Angeline A. Kopka, et al., Defendants, Appellants.

### No. 92–1770.

United States Court of Appeals, First Circuit.

Heard Dec. 7, 1992.

Decided March 10, 1993.

William E. Aivalikles, Nashua, NH, for appellants.

E. Whitney Drake, Sp. Counsel, with whom Ann S. DuRoss, Asst. Gen. Counsel, and Richard J. Osterman, Jr., Washington, DC, Sr. Counsel, F.D.I.C., were on brief for appellee F.D.I.C.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Circuit Judge.

The Federal Deposit Insurance Corporation ("FDIC"), as receiver of First Service Bank ("Bank"), sued appellants, Angeline Kopka and David Beach, to collect on promissory notes made out to the Bank. Appellants responded that they did not owe the FDIC the amount promised in the notes because they had entered settlement agreements over these notes with the Bank before the FDIC took over as receiver. The district court granted summary judgment in favor of the FDIC, finding that the doctrine established in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. § 1823(e) (1989), forbids the assertion of this alleged agreement against the FDIC. In addition, the district court granted attorneys' fees to the FDIC pursuant to provisions of appellants' promissory notes. Because we agree that § 1823(e) protects the FDIC in this case and that the district court granted a reasonable attorneys' fees award, we affirm the district court's judgment.

## BACKGROUND

Appellants borrowed money from the Bank and executed promissory notes in the amount of the loans. The notes matured in May and June of 1989. Appellants contend that they reached a settlement of these loans on March 15, 1989 [1] which required them to convey to the Bank the real estate that secured their promissory notes, free of all liens.

On March 31, 1989, the Commissioner of Banks for the Commonwealth of Massachusetts declared the Bank insolvent and ap-

pointed the FDIC as receiver.[2] As receiver, the FDIC demanded payment of all debts owed to the Bank when the Bank failed. No evidence of appellants' alleged settlement agreement was found in the Bank's records. As such, on March 3, 1991, as part of its debt collection campaign, the FDIC sued appellants on the promissory notes. Appellants argued that their settlement agreement with the Bank binds the FDIC as receiver and that they therefore do not owe the FDIC the amount claimed. The FDIC then moved for summary judgment, arguing that under *D'Oench, Duhme & Co.* and 12 U.S.C. § 1823(e), any unwritten agreement alleged by appellants cannot bind the FDIC. The district court initially denied the motion but granted it upon reconsideration.

## DISCUSSION

### I. SUMMARY JUDGMENT

■ Summary judgments receive plenary review in which we read the record and indulge all inferences in the light most favorable to the non-moving party. *E.H. Ashley & Co. v. Wells Fargo Alarm Services*, 907 F.2d 1274, 1277 (1st Cir.1990).

### II. THE *D'OENCH* DOCTRINE AND 12 U.S.C. § 1823(e) (1989)

■ Under *D'Oench, Duhme & Co.*, 315 U.S. at 460, 62 S.Ct. at 680, a party may not defend against a claim by the FDIC for collection on a promissory note based on an agreement that is not memorialized in some fashion in the failed bank's records.[3] The parties' reason for failing to exhibit the agreement in the bank's records is irrelevant, as is the FDIC's actual knowledge of the agreement. *Timberland Design, Inc.*

---

lieve these matters are suitably left to the Commonwealth courts.

1. Although appellants name December 21, 1988 as their settlement date, they maintain that the Bank refused to fulfill the agreement, forcing them to bring suit in the Hillsborough County Superior Court, which the court dismissed without prejudice on an unrelated ground. Consequently, they argue, they entered a new settlement agreement on March 15, 1989.

2. Massachusetts uses the term "liquidating agent" instead of receiver. According to 12 U.S.C. § 1813(j) (1989), however, the term "receiver" includes liquidating agents.

3. Although *D'Oench, Duhme & Co.* dealt with the FDIC in its corporate capacity, the *D'Oench* doctrine equally applies in cases involving the FDIC as receiver. *See Timberland Design, Inc. v. First Serv. Bank for Sav.*, 932 F.2d 46, 48–49 (1st Cir.1991).

*v. First Serv. Bank for Sav.*, 932 F.2d 46, 48–50 (1st Cir.1991).

Congress embraced the *D'Oench* doctrine in 12 U.S.C. § 1823(e). *Bateman v. FDIC*, 970 F.2d 924, 926 (1st Cir.1992). Section 1823(e) requires any agreement that would diminish the FDIC's interest in an asset acquired as receiver to be in writing and executed by the failed bank.[4]

Appellants concede that no writing executed by the Bank exists. Appellants argue, however, that § 1823(e) does not apply to this case for two reasons. First, when Congress originally enacted § 1823(e), the section applied to the FDIC only in its corporate capacity. It was not until August of 1989 that Congress amended § 1823(e), through the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), to make § 1823(e) directly applicable to the FDIC in its receiver capacity. Appellants argue that since they reached a settlement with the Bank on March 15, 1989, § 1823(e) does not apply to this case.

Second, appellants argue that even if § 1823(e), as amended by FIRREA, applied to cases prior to August 1989, it does not reach the present case because the FDIC acquired no interest in the promissory notes as required by § 1823(e). We address these arguments in turn.

**4.** Section 1823(e) provides:

No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it ... as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee ..., and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

**5.** In *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 836, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990), the Supreme Court noted a

## A. Retroactivity of FIRREA

In general, district courts apply the law in effect when they render their decisions, "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).[5] Since the FDIC brought this action on March 3, 1991, almost two years after the application of § 1823(e) to the FDIC as receiver, § 1823(e) presumptively applies to this case.

Thus, we examine the two exceptions to the general rule. First, the statute itself and the legislative history offer little guidance as to Congress' intent with respect to retroactivity. Under *Bradley*, this lack of guidance supports retroactive application. *Bradley*, 416 U.S. at 715–16, 94 S.Ct. at 2018 (stating that when legislative history is inconclusive, courts should apply the statute retroactively).

Second, to determine whether a manifest injustice will result from the retroactive application of a statute, we must balance the disappointment of private expectations caused by retroactive application against the public interest in enforcement of the statute. *Demars v. First Serv. Bank for Sav.*, 907 F.2d 1237, 1240 (1st Cir.1990). In the present case, appellants' disappointed expectations are small. Appellants had notice that their agreement

tension between *Bradley* and *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), which stated a presumption against retroactivity. However, the Court declined to reconcile the cases. *Kaiser Aluminum & Chem. Corp.*, 494 U.S. at 854, 110 S.Ct. at 1586.

The Seventh and Eight circuits have expressly addressed the issue of retroactivity with respect to the substantive provisions of FIRREA. Both of these circuits applied FIRREA retroactively. *See FDIC v. Wright*, 942 F.2d 1089, 1095–97 (7th Cir.1991); *FDIC v. Kasal*, 913 F.2d 487, 493 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991).

In light of the muddled state of the law in this area, we apply *Bradley* which is well-established precedent in this circuit. We find no prejudice in this application because *Bradley* permits retroactive application only where no manifest injustice will result. *See FDIC v. Wright*, 942 F.2d at 1095 n. 6.

had to meet certain criteria to be valid against the FDIC. The *D'Oench* doctrine was well established when appellants were negotiating with the Bank. Although *D'Oench, Duhme & Co.* did not explicitly require a writing executed by the Bank, it did require that any agreement be clearly documented in the Bank's records to be valid against the FDIC.

In addition, even if *D'Oench, Duhme & Co.* did not provide appellants with sufficient notice of the statute's requirements, appellants' failure to meet these requirements did not result from reasonable reliance on the *D'Oench* doctrine. *See Van Dorn Plastic Machinery Co. v. NLRB,* 939 F.2d 402, 404 (6th Cir.1991) (manifest injustice requires parties' reasonable reliance on preexisting law). Appellants did all they could to advance settlement of the debt. In fact, they sent the necessary documents, with their signatures, to the Bank for execution. The Bank, however, refused to sign the papers. Appellants, therefore, could have done nothing more to satisfy either the *D'Oench* or the statutory requirements.

Finally, there is no evidence that appellants made any attempt to perform under this agreement during the two years between the time that appellants allegedly entered this agreement and the time the FDIC filed suit. As such, we cannot conclude that appellants reasonably expected this agreement to shield them from liability on their notes.

On the other hand, § 1823(e) promotes important public policies. Congress amended § 1823(e), through FIRREA, to "aid the FDIC in its immediate responsibilities of dealing with mounting bank failures in this country." *FDIC v. Wright,* 942 F.2d 1089, 1096 (7th Cir.1991). The FDIC cannot protect public funds held in failed banks unless it can rely on the bank's records. *FDIC v. McCullough,* 911 F.2d 593, 600 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991). Accordingly, we find no manifest

injustice, and we apply § 1823(e), as amended by FIRREA, to the present case.

**B. Acquisition of the promissory notes**

 In order to receive protection under § 1823(e), the FDIC must first acquire the asset in question from the failed bank. In *FDIC v. Nemecek,* 641 F.Supp. 740, 743 (D.Kan.1986), the district court found that the FDIC acquired no interest in a bank's promissory note because the parties reached an accord and satisfaction of the note prior to the FDIC's receivership. Consequently, the court found that § 1823(e) did not protect the FDIC against the asserted accord and satisfaction. *Id.* Appellants argue that in the present case, their notes were similarly extinguished by their settlement agreement before the Bank failed.

Even assuming that we agree with the Kansas district court's interpretation of § 1823(e), however, *Nemecek* does not assist appellants. In *Nemecek,* the bank authorized its attorney to enter into an accord and satisfaction with the promisors; the bank's attorney had already received the promisors' consideration before the bank failed; and the bank and the promisors considered the case settled.

In the present case, nothing in the bank's records indicated that the bank authorized its attorney to accept the settlement, and no consideration changed hands. It would render § 1823(e) a nullity to hold unwritten agreements, without more, valid against the FDIC as long as the parties reach the agreement before the FDIC takes over. Banks and debtors would be able to defraud the FDIC through secret agreements simply by reaching the agreement before the FDIC took over. This is precisely the situation that *D'Oench* and § 1823(e) were intended to prevent.

Section 1823(e) precludes appellants from binding the FDIC to their alleged settlement. Accordingly, we affirm the district courts judgment with respect to the FDIC's claim on the promissory notes.[6]

---

**6.** Because we find that § 1823(e) applies in this case, we need not reach the issue of whether

*D'Oench Duhme & Co.* would have protected the FDIC in this situation on its own.

## III. ATTORNEYS' FEES

We review the district court's determination of attorneys' fees only for abuse of discretion. *Nydam v. Lennerton*, 948 F.2d 808, 812 (1st Cir.1991). The district court order exhibits a careful review of the fees and expenses. Indeed, the judge rejected $5,182 of the claimed expenses as unreasonable. In addition, the fees amounted to approximately two percent of the total judgment. We cannot find an abuse of discretion in this award.

*Affirmed.*