Lauriat, J.
Plaintiff, Asset Restructuring Fund, L.P. (“ARF”) brought this action to recover on three commercial notes and five guaranties (“the Instruments”), which were executed by the defendants, respectively, Aerial Lifts of New England, Inc. (“Aerial"), Beeco *605 Rentals, Inc. (“Beeco”), E.M. Bleiler Equipment Co., Inc. (“E.M. Bleiler”), Ernest Jay Bleiler (“Jay Bleiler”), and Edward J. Bleiler (“Edward Bleiler”). ARF has now moved for summary judgment on each count of its complaint. The defendants oppose the motion and contend that (1) there is a genuine issue of material fact as to the calculation of the interest rate on the Instruments and that (2) Edward Bleiler is released from his guaranty because the 1988 loan should have been paid in full with the March 1990 sale of certain collateral. For the reasons which follow, the plaintiffs motion for summary judgment is allowed.
BACKGROUND
On or about June 20, 1986, Aerial executed and delivered to Milford Savings Bank (“the Bank”) a demand promissory note in the principal amount of $361,728.39 (“the 1986 Note”). On the same date, Jay Bleiler executed and delivered to the Bank a personal guaranty for Aerial’s payment of the 1986 Note. The 1986 Note, on its face, provides for an annual interest rate of 12.0%, which is “to float with the bank’s base lending rate.” The 1986 Note also provides that the “bank reserves the right to change the Annual Percentage Rate at any time.”
On or about October 29, 1987, Aerial executed and delivered to the Bank a demand promissory note in the principal amount of $1,300,000 (“the 1987 Note”). On the same date, Jay Bleiler executed and delivered to the Bank another personal guaranty for Aerial’s payment of the 1987 Note. The 1987 Note provides, on its face, for an annual interest rate of 12.5%, which is to “float with the bank’s base lending rate,” and similarly provides that “the bank reserves the right to change the Annual Percentage Rate at any time.”
On or about July 5, 1988, Aerial executed and delivered to the Bank a demand promissory note in the principal amount of $240,000 (“the 1988 Note”). On the same date, Edward Bleiler executed and delivered to the Bank a personal guaranty for Aerial’s payment of the 1988 Note. The 1988 Note provides on its face for an annual interest rate of 11.5%, which is to “float (1.00%) below bank’s base lending rate,” and also provides that the “bank reserves the right to change the Annual Percentage Rate at any time.”
On or about November 25, 1989, Bleiler Equipment executed and delivered to the Bank an unlimited guaranty for Aerial’s payment of its obligations to the Bank. On the same date, Beeco also executed an unlimited and unconditional guaranty for Aerial’s payments of its obligations to the Bank.
On March 20, 1990 certain equipment which served as security for the loans was sold to the Brokers Alliance of America for $209,200. The defendants contend that the 1988 Note should have been paid in full with the proceeds from the sale.[1] The $209,200 was actually applied against the 1987 Note on March 30, 1990.[2] Aerial has failed to pay the remaining amounts owed under the 1986, 1987, and 1988 loans.
On July 6, 1990, the Office of the Comptroller of Currency declared the Bank insolvent and closed it down. The Federal Deposit Insurance Corporation (“FDIC”), in its capacity as receiver of the Bank, succeeded to the Bank’s rights under the Instruments. On May 19, 1992, FDIC, as liquidating agent, sold the Instruments to ARF.
By a letter dated July 10,1992, ARF made a written demand upon Jay Bleiler for all sums due under the 1986 and 1987 Notes. On the same date, ARF also made a written demand upon Edward Bleiler for payment of the 1988 Note. Neither Jay Bleiler, Edward Bleiler, Bleiler Equipment nor Beeco has made any payments pursuant to their respective Guaranties. ARF now seeks to collect the amount due under the Notes and the Guaranties. The defendants contend that (1) there is a genuine issue of material fact surrounding the calculation of the interest rate on the Instruments and (2) that Edward Bleiler is released from his guaranty because the 1988 loan should have been paid in full with the March 1990 sale of the property. ARF contends that it is entitled to judgment as a matter of law pursuant to the D’Oench, Duhme doctrine and 12 U.S.C. §1823(e).
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
I.
The defendants do not dispute the validity of the Notes or their guaranties. (Defendant’s Opposition, p. 2.) The defendants assert, however, that ARF’s calculation of interest based on the flat interest rate listed on each loan is erroneous.[3] The defendants contend that the loans were floating rate loans which were tied into an index produced regularly by the Bank and referred to as its “Base Lending Rate.” The defendants concede that, after the Bank was declared insolvent on July 6, 1990, no base lending rate was announced and the Notes failed to provide a successor index. However, the defendants assert that “the Notes are not arbitrary Notes where the successor lender can now determine whatever rate it wants to impose on the Defendants” and thus, that there exists a factual dispute as to the proper interest rate to be applied to the loans. ARF contends that, as assignee of FDIC, it is entitled to the protection of the D’Oench, Duhme *606 doctrine and need not honor any agreements which provide that the applicable interest is other than the rate expressly stated on the Notes.
The D’Oench, Duhme doctrine, first enunciated in D’Oench, Duhme & Co. v. Federal Deposit Insurance Corp., 315 U.S. 447 (1942), and later codified in 12 U.S.C. §1823(e) (Supp. III 1991),[4] represents a federal policy to protect the FDIC from any secret arrangements or agreements between a customer and a failed bank which may result in it incorrectly assessing the value of the bank’s assets. D’Oench Duhme therefore operates to “bar[ ] all defenses and affirmative claims whether cloaked in terms of contract or tort, as long as those claims arise out of an alleged secret agreement.” Timberland Design, Inc. v. First Serv. Bank for Sav., 932 F.2d 46, 50 (1st Cir. 1991). Significantly, the D’Oench, Duhme doctrine requires no showing of any intent to defraud — it is enough that the person “lends himself to a scheme or arrangement.” Id. at 48. The protection of the D’Oench, Duhme doctrine has been extended to private assignees of the FDIC. Federal Deposit Ins. Corp. v. Bledsoe, 989 F.2d 805, 810 (5th Cir. 1993); see Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N. A., 894 F.2d 750 (5th Cir. 1990), cert. denied, 498 U.S. 895 (1990) (assignees of federal insurers are also entitled to immunity under D’Oench Duhme doctrine).
Although the defendants assert that the Notes are ambiguous as to the interest rate which apply when the Bank no longer announced a base lending rate, an interest rate is explicitly listed on each loan.[5] Pursuant to the D’Oench Duhme doctrine, in the absence of a base lending rate, ARF may apply the interest rate expressly provided in the Notes without regard to any alternate agreements between the defendants and the Bank. Indeed, if ARF were to determine a fictional base lending rate in order to calculate the interest rates, it would be engaging in guesswork at best. The court concludes that ARF has appropriately calculated the interest rates on the Notes and, thus, the defendants’ contention raises no genuine issues of material fact.
II.
The defendants further assert that Edward Bleiler should not be liable for any damages because the 1988 Note, which he personally guaranteed, should have been repaid in full by the sale of two pieces of equipment which secured the 1988 Note. ARF contends that, on the face of the Note, the Bank had the authority to credit proceeds from the sale of the equipment against any Aerial liability.
The 1988 Note states in relevant part:
The maker has deposited with said bank as COLLATERAL SECURITY" for payment of this or any other direct or indirect liability or liabilities of _ to said bank due or to become due, or that may be hereafter contracted. The following property, viz: secured by security agreement dated 11 -25-86 . .. for the payment of this or any other liability, direct or indirect, joint or several of the undersigned, already existing or which may hereafter arise, in favor of said holder or holders, the property listed on the back hereof, with power, on the nonpayment of this or any other such liability, to sell and transfer said property or any property added to or substituted for the same or any part thereof, at Brokers’ Board or at public auction . . .
The defendants contend that the blank space in the 1988 Note, which presumably should state "Aerial,” signifies that the collateral security named in the Security Agreement of November 25, 1986, was security for the payment of the 1988 Note only. However, the defendants’ interpretation of the Note would render the remaining language in the 1988 Note meaningless. In interpreting contracts, the “court must give effect to the parties’ intentions and construe the language to give it reasonable meaning wherever possible.” Shea v. Bay State Gas Co., 383 Mass. 218, 225 (1981) . Because the Note expressly refers to the liabilities of the “Undersigned,” which is “Edward J. Bleiler, President,” signing on behalf of “Aerial Lifts of New England, Inc.,” the omission of the word “Aerial” from the top portion of the Note can only be reasonably construed as a mere error in drafting. The court therefore concludes that the blank space in the 1988 Note does not compel an interpretation that the collateral securiiy in question could only be applied to the 1988 Note.
The defendants further contend that Edward Bleiler specifically requested that the Bank apply the funds received from the sale against the 1988 Note. (Affidavit of Edward J. Bleiler, ¶4). The defendants, however, concede that they did not receive any written statements from the Bank indicating that this course of action was taken. Even if the Bank had orally agreed to apply the proceeds against the 1988 loan, ARF is protected by the D’Oench Duhme doctrine and, therefore, need not honor any oral agreements which do not comply with the requirements of 12 U.S.C. §1823(e). Thus, because the Notes authorized the Bank to apply proceeds from the sale of collateral against any Aerial liability and because any contrary side agreements are unenforceable pursuant to the D’Oench Duhme doctrine, ARF is entitled to judgment as a matter of law on all counts of its complaint.
ORDER
For the foregoing reasons, the Plaintiffs Motion for Summary Judgment is ALLOWED.

 At the time the $209,200.00 was received by the Milford Savings Bank, the principal balance due on the 1988 Note was $190,000.00.

 The 1987 Note has a higher interest rate than the 1988 Note.

 ARF calculated the interest at the flat rates of 11.50% on the 1988 Note, 12.50% on the 1987 Note, and 12% on the 1986 Notes from October 1989 through February 1993 and continuing daily.

 Section 1823(e) provides:
*607 No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement
(1) is in writing,
(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(4) has been, continuously, from the time of its execution, an official record of the depository institution.
12 U.S.C. §1823(e).

 The Notes provide for an annual interest rate, which is “to float with the bank’s base lending rate.”