**WINTERBROOK REALTY, INC., et al.**

v.

**The FEDERAL DEPOSIT INSURANCE CORPORATION, et al.**

Civ. No. 90–561–JD.

United States District Court, D. New Hampshire.

April 22, 1993.

Duncan J. Farmer, Laconia, NH, Peter D. Wenger, Bedford, NH, for plaintiffs.

William M. Greene, Campton, NH, for defendants.

## ORDER

DiCLERICO, Chief Judge.

In this action, plaintiffs Winterbrook Properties, Inc. ("Winterbrook") and Thomas N.T. Mullen, sole stockholder and director of Winterbrook, have sued defendants the Federal Deposit Insurance Company ("FDIC") as receiver of the Bank of New England, N.A. (the "Bank") and Lowell Union Properties, Inc. ("LUP"), originally a wholly owned subsidiary of the Bank and now a wholly owned subsidiary of the FDIC. The action alleges breach of an oral contract, misrepresentation, quantum meruit and unjust enrichment. The plaintiffs originally filed suit against the Bank and LUP in the Grafton County Superior Court on December 4, 1990. On December 14, 1990, the defendants removed the action to the United States District Court for the District of New Hampshire pursuant to 28 U.S.C.A. § 1441 (West 1973 & Supp.1992) and 28 U.S.C.A. § 1446 (West Supp.1992) based on diversity of citizenship. On January 6, 1991, the Office of the Comptroller of the Currency declared the Bank insolvent and appointed the FDIC receiver of the Bank. The FDIC has filed a motion for summary judgment. For the following reasons, the court grants the FDIC's motion.

### Background

The Bank held a mortgage secured by a number of units at Ledgewood Village Condominium in Campton, New Hampshire. In November 1989 the Bank foreclosed on the mortgage by selling the property to LUP. At the time of foreclosure, the condominium project was incomplete. The plaintiffs allege the Bank orally authorized them to act as agents to sell the units, establishing an oral real estate listing contract. The plaintiffs contend that on December 13, 1989, they submitted a detailed proposal of work to be done and requested that the Bank sign the proposal to indicate acceptance. Although the Bank never signed the proposal, the plaintiffs assert the Bank orally authorized the work and paid several invoices for work performed according to the proposal. The plaintiffs claim they have billed the defendants on approximately twenty-one occasions in the total amount of $64,748.45 and the defendants have paid them on numerous occasions a total amount of $58,827.83. The plaintiffs claim they secured eight purchasers who paid deposits and executed non-binding reservation agreements but the defendants failed to close the sales on the units. The plaintiffs claim the defendants agreed to pay them commissions on the sales amounting to $83,500. They seek the commissions and compensation for damage to their reputation resulting from their inability to close the sales.

### Discussion

Summary judgment is appropriate when material facts are undisputed and the moving party is entitled to judgment as a matter of law. *Rodriguez–Garcia v. Davila*, 904 F.2d 90, 94 (1st Cir.1990) (citing Fed.R.Civ.P. 56(c)). The burden is on the moving party to establish the lack of a genuine, material factual issue, *Finn v. Consolidated Rail Corp.*,

782 F.2d 13, 15 (1st Cir.1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. *Caputo v. Boston Edison Co.*, 924 F.2d 11, 13 (1st Cir.1991). However, once the movant has made a properly supported motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)).

The FDIC moves for summary judgment, contending the plaintiffs' claims are barred by 12 U.S.C.A. § 1823(e) (West 1989) and the principles established by *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and subsequent cases. The plaintiffs counter the *D'Oench* doctrine and § 1823(e) do not bar claims for services rendered to a failed bank or claims based on misrepresentation. They also contend the *D'Oench* doctrine and § 1823(e) do not bar claims based on quantum meruit, unjust enrichment or claims based on a violation of New Hampshire law concerning real estate commissions. The court agrees with the FDIC that the *D'Oench* doctrine bars the plaintiffs' claims.

*I. The D'Oench Doctrine and § 1823(e)*

In *D'Oench*, the defendant executed a note payable to a bank with the understanding the bank would never call the note for payment. 315 U.S. at 454, 62 S.Ct. at 678. When the FDIC acquired the note and demanded payment for it after the bank failed, it learned of the secret agreement. *Id.* The *D'Oench* Court held the defendant could not use the secret agreement as a defense to the FDIC's payment action. *Id.* at 461, 62 S.Ct. at 681.

The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled.

*Id.* at 460, 62 S.Ct. at 681. The *D'Oench* doctrine has been extended to apply to situations somewhat different from the facts of *D'Oench* itself. *In re NBW Commercial Paper Litig.*, ("*NBW*"), Nos. 90–1755, 91–0626, 1992 WL 73135, at *3, 1992 U.S.Dist. LEXIS 2842, at *12 (D.D.C. Mar. 11, 1992).

Nevertheless, the paradigmatic application of the *D'Oench* doctrine remains in the lender-borrower context; the vast majority of cases interpreting the doctrine have involved, despite the complexity of the transaction or the procedural posture of the case, individuals or entities who owed money to the bank and who sought to avoid payment of their notes by asserting an oral side agreement.

*NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at * 4, 1992 U.S.Dist. LEXIS 2842, at *16. The *D'Oench* doctrine bars " 'affirmative claims as well as defenses which are premised upon secret agreements.' " *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1344 (1st Cir.1992) (quoting *Timberland Design, Inc. v. First Serv. Bank for Sav.*, 932 F.2d 46, 49 (1st Cir.1991)).

The *D'Oench* doctrine furthers the policy that bank examiners must be able to rely on the books of the institutions which they insure to assess accurately the institutions' solvency. *NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at * 10, 1992 U.S.Dist. LEXIS 2842, at *36–37.

*D'Oench* determines, as between the two "innocents" (the FDIC and the "wronged" bank customer) who should bear the cost of the failed bank's wrongs. If the customer bears the slightest blame—by failing to protect himself by getting an agreement in writing, then the scale tips in favor of the FDIC and *D'Oench* bars the claim or defense.

*NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *15, 1992 U.S.Dist. LEXIS 2842, at *56.

Section 1823(e) of Title 12 of the United States Code Annotated fosters the same policies that generated the *D'Oench* doctrine. *NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at * 4, 1992 U.S.Dist. LEXIS 2842, at `16. The statute provides:

No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—

(1) is in writing

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C.A. § 1823(e). The United States Supreme Court has interpreted § 1823(e) to bar a plaintiff from asserting as a defense against the FDIC that a note was procured by fraudulent misrepresentations made by a bank officer. *Langley v. FDIC*, 484 U.S. 86, 88–89, 93, 108 S.Ct. 396, 399–400, 402, 98 L.Ed.2d 340 (1987). Both the *D'Oench* doctrine and § 1823(e) are designed to protect the government from secret agreements. *NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at * 9, 1992 U.S.Dist. LEXIS 2842, at *33. They are also based on a policy favoring creditors and depositors over those who can protect themselves from harm by insisting on a written agreement meeting the requirements of § 1823(e). *NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *10, 1992 U.S.Dist. LEXIS 2842, at *37.

In *NBW*, the District Court for the District of Columbia thoroughly examined the relationship between the *D'Oench* doctrine and § 1823(e). *NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *5–28, 1992 U.S.Dist. LEXIS 2842, at *11–56. The *NBW* court found that although courts have traditionally interpreted the *D'Oench* doctrine and § 1823(e) together, they are not identical in scope. *See NBW*, Nos. 90–1755, 91–0626,

1992 WL 73135, at *8, 1992 U.S.Dist. LEXIS 2842, at *32. The *NBW* court held § 1823(e) governs only cases involving a specific "asset." *NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *9, 1992 U.S.Dist. LEXIS 2842, at *33–34. "Under no circumstances, however, should [asset] be interpreted so broadly as to encompass any liability or other existing condition which affects the financial condition of the receivership." *Id.*, 1992 WL 73135, at *13, 1992 U.S.Dist. LEXIS 2842, at *47.

The *NBW* court found the *D'Oench* doctrine is broader in scope than § 1823(e), governing claims not involving an "asset" under § 1823(e) but implicating the same policies. *NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *9–10, 15, 19, 1992 U.S.Dist. LEXIS 2842, at *33–34, 48, 54–55.

It is to these situations outside of § 1823(e) that *D'Oench* applies and courts have retained *D'Oench* (with Congress' silence and approval) to deal with such situations; in this sense, *D'Oench* can best be described as a safety net which Congress has left to insure that the specific wording of the statute does not prevent the true application of Congress' policies.

*NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *9, 1992 U.S. Dist. LEXIS 2842, at *34 (footnote omitted). The *NBW* court suggested a two-step analysis to guide courts considering whether the *D'Oench* doctrine and § 1823(e) apply outside the traditional lender-borrower context. *NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *10–11, 1992 U.S. Dist. LEXIS 2842, at *38.

First, in a very generic sense, is the party adverse to the FDIC more like a borrower or a creditor/depositor? If the latter, then *D'Oench* may simply not apply, though the expansion of *D'Oench* over the last forty years suggests that the inquiry may not be this simple. Second and more concretely, could the party have taken reasonable steps to protect themselves through some form of written agreement? If the party is relying on an unwritten agreement for a claim or a defense, then either *D'Oench* or § 1823(e) probably applies.

*NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *10, 1992 U.S. Dist. LEXIS 2842, at *38–39 (footnotes omitted). When *D'Oench* applies but § 1823(e) does not apply, a less stringent writing requirement than that in § 1823(e) applies. *NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *28 n. 23, 1992 U.S. Dist. LEXIS 2842, at *56 n. 23.

The *NBW* court briefly considered whether claims based on oral service contracts would fall under *D'Oench* or § 1823(e). *NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *28 n. 23, 1992 U.S. Dist. LEXIS 2842, at *56 n. 23. "The court notes, however, that contracts for services, which would not fall under § 1823(e), could reasonably survive *D'Oench*'s less stringent writing requirement if the contract were in writing and recorded in the bank's records." *NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *28 n. 23, 1992 U.S. Dist. LEXIS 2842, at *56 n. 23.

## II. Application of the D'Oench doctrine and § 1823(e)

■ The plaintiffs contend § 1823(e) does not apply in this case because this case does not involve an oral agreement made contemporaneously with the FDIC's acquisition of a specific asset. The court agrees this action does not involve an "asset" within § 1823(e). However, the court's inquiry does not end there. The court must consider whether the *D'Oench* doctrine applies. The plaintiffs argue the *D'Oench* doctrine does not bar their claims because the doctrine favors the interests of creditors like themselves over the interests of borrowers.

■ The court first considers whether plaintiffs' contract claims are barred by the *D'Oench* doctrine.[1] The court adopts the two-step analysis enunciated in *NBW*. Nos. 90–1755, 91–0626, 1992 WL 73135, at *10–11, 1992 U.S. Dist. LEXIS 2842, at *38–39. In

the first step, the court analyzes whether the plaintiffs' claims are more like the claims of a borrower or a creditor. The plaintiffs claim they have provided services to the defendants and have not been fully compensated. The court therefore finds the plaintiffs' claims, in a generic sense, are more like those of a creditor than those of a borrower. The court therefore must consider whether the *D'Oench* doctrine applies at all in this case.

■ To determine whether the *D'Oench* doctrine applies, the court proceeds to the second step in the *NBW* analysis. *See* Nos. 90–1755, 91–0626, 1992 WL 73135, at *10–11, 1992 U.S. Dist. LEXIS 2842, at *38–39. The court considers whether the plaintiffs could have taken reasonable steps to protect themselves through some form of written agreement. The plaintiffs submitted a written proposal to the defendants and requested that the defendants sign it to indicate acceptance. Despite the defendants' failure to sign the proposal, the plaintiffs continued to perform based on oral representations. The court finds the plaintiffs could have protected themselves with a written agreement and failed to do so. Therefore, the court finds the plaintiffs are relying on an unwritten agreement for their claims and the *D'Oench* doctrine applies.

The *D'Oench* doctrine places the cost of the failed bank's wrongs on the plaintiffs if they bear the slightest blame by failing to protect themselves by getting an agreement in writing. *See NBW*, Nos. 90–1755, 91–0626, 1992 WL 73135, at *15, 1992 U.S. Dist. LEXIS 2842, at *56. Although the writing requirement under the *D'Oench* doctrine is less stringent than that under § 1823(e), the court finds the requirement has not been met because the plaintiffs relied on an oral contract. *See NBW*, Nos. 90–1755, 91–0626,

---

1. The court notes plaintiffs also allege defendants owe them real estate commissions under New Hampshire law. New Hampshire law provides that a party who has earned a real estate commission is entitled to recover the commission. *93 Clearing House Inc. v. Khoury*, 120 N.H. 346, 349, 415 A.2d 671 (1980); *Roger Coleman Assocs., Inc. v. Retsof Co. Trust*, 117 N.H. 81, 83, 369 A.2d 1143 (1977). However, such claims are based on express or implied contracts.

*See Belleau v. Hopewell*, 120 N.H. 46, 51, 411 A.2d 456 (1980); *93 Clearing House Inc.*, 120 N.H. at 348–49, 415 A.2d 671. Because the court finds the claim for commissions is essentially an express or implied contract claim, the claim is governed by the court's discussion of the plaintiffs' express contract and equitable claims.

1992 WL 73135, at *28 n. 23, 1992 U.S. Dist. LEXIS 2842, at *56 n. 23. Nothing in the Bank's records could have made the FDIC aware of the plaintiffs' claims. In view of this analysis, the court grants the FDIC's motion for summary judgment on the plaintiffs' contract claims.

■ The court next considers whether the D'Oench doctrine bars the plaintiffs' misrepresentation claims. "[A] party need not sue expressly on the agreement to be barred. Torts and other claims which center around an unrecorded agreement are also barred, even though the plaintiff is not asserting the agreement itself explicitly against the FDIC." NBW, Nos. 90–1755, 91–0626, 1992 WL 73135, at *14, 1992 U.S. Dist. LEXIS 2842, at *51; see also McCullough v. FDIC, 987 F.2d 870, 874 (1st Cir.1993) (The D'Oench doctrine bars defenses and affirmative claims whether cloaked in terms of contract or tort, as long as those claims arise out of an alleged secret agreement); Timberland, 932 F.2d at 50 (same); In re 604 Columbus Ave. Realty Trust, 968 F.2d at 1344 (same). The NBW court held the D'Oench doctrine barred the plaintiffs' claims for misrepresentations and material omissions. NBW, Nos. 90–1755, 91–0626, 1992 WL 73135, at *19, 1992 U.S. Dist. LEXIS 2842, at *71; see also In re 604 Columbus Ave. Realty Trust, 968 F.2d at 1082. The court finds the plaintiffs in this case, like the plaintiffs in NBW,

> accepted the representations of the bank ... without recording the representation in a fashion that would make bank examiners aware; the only difference between this plaintiff and the plaintiff in Langley is that the plaintiff there was a borrower, a difference which this court rejects in the context of the D'Oench doctrine.

NBW, Nos. 90–1755, 91–0626, 1992 WL 73135, at *19, 1992 U.S. Dist. LEXIS 2842, at *72; see also L & R Prebuilt Homes, Inc. v. New England AllBank for Sav., 783 F.Supp. 11, 15 (D.N.H.1992). In view of this analysis, the court finds the plaintiffs' misrepresentation claims are also barred by the D'Oench doctrine. The court therefore grants the FDIC's motion for summary judgment on the misrepresentation claims.

■ Finally, the court examines whether the plaintiffs' claims for equitable relief, unjust enrichment and quantum meruit, also are barred by the D'Oench doctrine. Courts have held the D'Oench doctrine bars claims for unjust enrichment and quantum meruit arising from secret agreements with failed banks. See Twin Constr., Inc. v. Boca Raton, Inc., 925 F.2d 378, 382 (11th Cir.1991) (courts have applied the D'Oench doctrine to protect the FDIC from affirmative defenses including unjust enrichment); Raymond L. Sabbag, Inc. v. FDIC, No. 90–12797-Z, 1991 WL 146876, at *2 (D.Mass. July 26, 1991) (plaintiff's quantum meruit claim barred by the D'Oench doctrine); AmWest Sav. Ass'n v. Farmers Market of Odessa, Inc., 753 F.Supp. 1339, 1345 (W.D.Tex.1990) (unjust enrichment claim may not be asserted against the FDIC); Federal Sav. & Loan Ins. Corp. v. McLean, No. CA3-87-3005D, 1988 WL 220584, at *4 (N.D.Tex. Nov. 14, 1988) (the D'Oench doctrine has been used to bar nearly every defense raised by the maker of a note against the FDIC, including claims for unjust enrichment). The plaintiffs' claims for unjust enrichment and quantum meruit seek compensation for services rendered to the defendants not evidenced by a written agreement. Once again, the court notes the plaintiffs could have protected themselves by insisting on a written agreement. Because they did not, the D'Oench doctrine bars their claims.

The court finds, viewing the evidence in the light most favorable to the plaintiffs, there is no dispute of material fact and the defendants are entitled to judgment as a matter of law. The court grants the defendants' motion for summary judgment.

### Summary

For the foregoing reasons, the defendants' Motion for Summary Judgment (document no. 57) is granted.

SO ORDERED.