39 F.3d 1166
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Jerry BARROWS, Plaintiff, Appellant,
v.
RESOLUTION TRUST CORPORATION, ET AL., Defendants, Appellees.
 No. 94-1555.
 United States Court of Appeals,
First Circuit.
 Nov. 15, 1994.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Joseph A. DiClerico, U.S. District Judge ]
 Jerry Barrows on brief pro se.
 McLane, Graf, Raulerson & Middleton, Professional Association, Ralph F. Holmes and Suzanne M. Gorman on brief for appellee.
 D.N.H.
 AFFIRMED.
 Before Cyr, Circuit Judge, Bownes, Senior Circuit Judge, and Boudin, Circuit Judge.
 Per Curiam.
 
 
 1
 This appeal has its origin in a lender liability lawsuit brought by plaintiff-appellant Jerry Barrows against First Northern Cooperative Bank in New Hampshire state court. Before the case came to trial, the bank failed and the Resolution Trust Corporation ("RTC") was appointed as receiver. The RTC removed the suit to federal district court and moved for summary judgment. The district court granted summary judgment on thirteen out of the fourteen counts of the first amended complaint. Following a trial on the merits, judgment was entered in favor of appellant on the sole remaining count. Barrows appeals pro se from various interlocutory rulings of the district court, including the grant of partial summary judgment. We affirm.
 
 I.
 
 2
 The history of this case is quite complicated, and we recount only those facts necessary to an understanding of our decision. On October 17, 1988, Barrows filed an eight count complaint against First Northern Cooperative Bank in New Hampshire state court alleging breach of contract, breach of warranty, tortious interference with contractual relations, and slander. While the lawsuit was pending in state court, Barrows entered into bankruptcy and a trustee was appointed for his estate. Although the trustee expressed his intent to pursue the action, no formal substitution of the trustee as plaintiff took place at that time, and the case continued to be prosecuted by Barrows.
 
 
 3
 Following substitution of the RTC for the bank as defendant and removal of the case to federal district court, the RTC moved for a stay of court proceedings pending exhaustion of administrative remedies. Barrows moved for leave to amend his complaint. By order dated June 7, 1991, Magistrate Judge Barry imposed a 180-day stay and granted Barrows leave until July 8, 1991 to file an amended complaint. On July 8, 1991, Barrows filed an amended complaint which omitted his previous allegations of slander and breach of warranty but added several counts, including claims for negligence, breach of covenant of good faith and fair dealing, negligent misrepresentation, and violation of the Racketeer Influenced and Corrupt Organizations laws. The amended complaint also added individual defendants. Following the expiration of the 180-day period, the RTC filed an amended answer on December 27, 1991.
 
 
 4
 On February 19, 1992, Magistrate Judge Arenas ordered that the bankruptcy trustee be substituted as plaintiff. Over the next several months, the action was dismissed with respect to most of the individual defendants. On August 6, 1992, Magistrate Judge Arenas ordered plaintiff to show cause within fifteen days why he should not recommend that the action be dismissed with respect to certain remaining individual defendants. Sometime thereafter, the bankruptcy trustee abandoned the action to Barrows. Neither the trustee nor Barrows ever responded directly to the show cause order by addressing why the action should continue against remaining individual defendants. On October 6, 1992, however, Barrows filed a second amended complaint.
 
 
 5
 On April 23, 1993, the RTC filed a motion for summary judgment based on the first amended complaint. On June 11, 1993, the district court held a status conference to determine, inter alia, which complaint was presently before the court. The court found that the first amended complaint was the operative complaint, and that the second amended complaint "was filed without court permission and without consent of the parties" and, accordingly, had "no legal effect pursuant to Fed. R. Civ. P. 15(a)." On August 19, 1993, the district court granted summary judgment to the RTC on 13 out of the 14 counts in the first amended complaint on the grounds that Barrows' claims failed to satisfy 12 U.S.C. Sec. 1823(e) and the common law D'Oench doctrine. On August 26, 1993, Barrows filed a motion to "alter or amend" the court's summary judgment order. This motion was denied. On September 15, 1993, Barrows filed a motion to enforce a settlement agreement that he and First Northern Cooperative Bank had allegedly entered into in January 1991, shortly before the RTC was appointed as receiver. The district court denied this motion as untimely. Final judgment was entered on February 24, 1994. This appeal followed.
 
 II.
 
 6
 We begin by addressing some of the alleged procedural errors. Contrary to the position taken by appellant, there was no error in substituting the RTC as party-defendant. Pursuant to 12 U.S.C. Secs. 1441a(b)(4) and 1821(d)(2), the RTC succeeded to "all rights, titles, powers, and privileges" of the failed bank. Fed. R. Civ. P. 25(c) gives the district court discretion to substitute a party "[i]n case of any transfer of interest." There are many cases in which the RTC as receiver is substituted, as a matter of course, for a failed bank. See, e.g., RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1147 (11th Cir. 1993) (substitution of RTC as plaintiff); Pierce & Assoc. v. RTC, 987 F.2d 663, 664 (10th Cir. 1993) (substitution of RTC as defendant); Payne v. Security Sav. & Loan Ass'n, 924 F.2d 109, 110-11 (7th Cir. 1991) (same). Appellant has advanced no plausible ground why the RTC's motion for substitution in the instant case should have been denied or why a hearing was necessary.
 
 
 7
 We also reject appellant's argument that the district court erred in proceeding with the case after the RTC failed to make a determination of his administrative claim within 180 days. The stay order, by its very terms, granted a stay of only 180 days. Upon the expiration of this period, on December 4, 1991, the district court appropriately continued with the case. Cf. Marquis v. FDIC, 965 F.2d 1148, 1155 (1st Cir. 1992) (contemplating that once the FDIC steps in as receiver, the district court would in the vast majority of cases "hold pending litigation in abeyance until the administrative review process has run its course, or 180 days has passed, whichever first occurs").
 
 
 8
 We are also persuaded, for the reasons stated in the district court's order dated June 11, 1993, that the court did not err in finding that the first amended complaint was the operative complaint. For the first time on appeal, appellant argues that the first amended complaint, which was filed on his behalf, could not be the operative complaint because it was filed after the action had vested in the bankruptcy trustee for the benefit of the estate but before the trustee abandoned the action. This argument is waived since it was not raised below. See United States v. Palmer, 956 F.2d 3, 6 (1st Cir. 1992). Moreover, we note that at the time the first amended complaint was filed, the trustee had not yet been substituted as plaintiff. Under Fed. R. Civ. P. 25(c), it was proper, in the absence of such substitution, to continue the action by Barrows. See United States v. Transocean Air Lines, Inc., 356 F.2d 702, 704 (5th Cir. 1966) (adjudication in bankruptcy of carrier did not, of itself, substitute bankruptcy trustee as party to action); Liberty Broadcasting Sys., Inc. v. Albertson, 15 F.R.D. 121, 122 (W.D.N.Y. 1953) (where no motion was made to substitute bankruptcy trustee as plaintiff, it was proper to continue the action as originally instituted).
 
 III.
 
 9
 We now turn to appellant's argument that the district court erred in failing to enforce an alleged settlement agreement that appellant and First Northern Cooperative Bank entered into in January 1991, shortly before the RTC was appointed as receiver. According to Barrows, the bank agreed to provide him with various loans in exchange for his dropping the lawsuit. Following its appointment as receiver, however, the RTC allegedly refused to honor the agreement.
 
 
 10
 As an initial matter, we agree with the district court that the motion to enforce settlement agreement, which was filed on September 15, 1993, was untimely. In so ruling, we do not rely, as did the district court, in part, on the timely filing requirement of Fed. R. Civ. P. 59(e). Appellant's motion to enforce settlement could not properly be treated as a motion to alter or amend judgment under Rule 59(e) because this rule applies only to final judgments. See, e.g., Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1472 (4th Cir. 1991). The partial summary judgment which appellant sought to set aside was not a final judgment. See Fed. R. Civ. P. 54. In our view, appellant's motion to enforce was untimely not because it was filed more than ten days after the entry of summary judgment, but rather because it was filed over two and a half years after the date of the alleged agreement and after the case was over with respect to all but appellant's one remaining claim which survived summary judgment.
 
 
 11
 Moreover, the district court was precluded from enforcing the agreement by 12 U.S.C. Sec. 1821(j), the anti-injunction provision of the Financial Institutions Reform and Recovery Act. Section 1821(j) provides that:
 
 
 12
 Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [RTC] as a conservator or a receiver.
 
 
 13
 12 U.S.C. Sec. 1821(j). In refusing to provide appellant with a loan, the RTC was acting pursuant to its statutory power to "preserve and conserve the assets and property" of the failed institution. See 12 U.S.C. Sec. 1821(d)(2)(B). Under the circumstances, the district court was without jurisdiction to enforce the alleged agreement. Cf. Volges v. RTC, 32 F.3d 50, 52 (2d Cir. 1994) (section 1821(j) deprived district court of jurisdiction to enjoin the RTC from auctioning off mortgages owned by failed depository institution); Lloyd v. FDIC, 22 F.3d 335, 336 (1st Cir. 1994) (holding that district court lacked jurisdiction to enjoin FDIC from foreclosing on mortgaged property).
 
 IV.
 
 14
 We next address appellant's argument that the district court erred in granting partial summary judgment for the RTC. "Summary judgment is appropriate where the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Commercial Union Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1050 (1st Cir. 1993). The moving party bears the burden of showing that there is no genuine, material factual issue. Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993), cert. denied, 115 S. Ct. 56 (1994). However, once the moving party has made a properly supported motion for summary judgment, the adverse party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). We review a grant of summary judgment de novo. Snow, 12 F.3d at 1157.
 
 
 15
 Appellant argues that the district court should have refrained from ruling on the summary judgment motion because the RTC had yet to make a determination on his administrative claim. He also argues that a ruling on the summary judgment motion was improper since he had reached a settlement agreement with the bank. We pass the question whether these arguments were properly preserved and reject them in light of our previous discussion. The district court properly proceeded with the case once the 180-day stay expired, and the court was without jurisdiction to enforce the alleged settlement agreement.
 
 
 16
 Appellant's sole challenge to the merits of the district court's summary judgment ruling is with respect to Counts I-III of the first amended complaint. In these counts, Barrows alleged that the bank had agreed to issue an "unconditional" letter of credit, and that it breached this agreement (Count 1), was negligent (Count 2), and intentionally interfered with his contractual relationship with a seller (Count 3), by issuing a standby letter of credit. In its motion for summary judgment, the RTC argued that these claims failed to satisfy 12 U.S.C. Sec. 1823(e) and the D'Oench doctrine.[1] The district court agreed, and found, in particular, that appellant had "failed to show a dispute of material fact exist[ed] concerning whether the letter of credit contract was approved by the Bank's board of directors or loan committee." See 12 U.S.C. Sec. 1823(e)(3).
 
 
 17
 Appellant argues that Sec. 1823(e) does not bar his claims in Counts I-III because the alleged agreement related to a bank liability, not an asset. See Agri Export Coop. v. Universal Sav. Assoc'n, 767 F. Supp. 824, 833 (S.D.Tex. 1991) (observing that a letter of credit is a bank obligation and not an asset). This argument was not properly preserved in the district court, and, hence, is waived. Moreover, even if we were to reach the issue, we would affirm the judgment below. The D'Oench doctrine is in certain respects broader than Sec. 1823(e) and is not constrained by any requirement that the agreement relate to a specific asset. See Hall v. FDIC, 920 F.2d 334, 339 (6th Cir. 1990), cert. denied, 501 U.S. 1231 (1991); Winterbrook Realty, Inc. v. FDIC, 820 F. Supp. 27, 30-31 (D.N.H. 1993). Since there is no evidence that the alleged agreement to issue an "unconditional" letter of credit was recorded in bank records, the D'Oench doctrine, independently of Sec. 1823(e), bars appellant's claims arising out of this agreement.[2] See Nutro Prods. Corp. v. NCNB Texas Nat'l Bank, 1994 WL 530166, at * 4 (5th Cir. Oct. 17, 1994) (holding that D'Oench doctrine precluded consideration of unrecorded agreement to extend expiration date in letter of credit); Timberland Design, Inc. v. First Serv. Bank For Sav., 932 F.2d 46 (1st Cir. 1991) (holding that D'Oench doctrine barred claim based on unrecorded agreement to provide a future loan).
 
 V.
 
 18
 We have carefully considered appellant's remaining arguments and are persuaded that they are without merit.
 
 
 19
 Affirmed.
 
 
 
 [1]
 The district court's summary judgment order contains a thorough discussion of the D'Oench doctrine, and its statutory counterpart, 12 U.S.C. Sec. 1823(e). The D'Oench doctrine has its origins in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942). The evolved doctrine bars defenses and affirmative claims against the RTC, following its appointment as conservator or receiver to a failed institution, as long as those claims arise out of an unrecorded agreement. See McCullough v. FDIC, 987 F.2d 870, 874 (1st Cir. 1993) (observing that D'Oench doctrine bars affirmative claims whether cloaked in terms of contract or tort, as long as those claims arise out of an alleged "secret" agreement). Section 1823(e) bars claims or defenses asserted against the RTC based on any agreement "which tends to diminish or defeat the interest of the [RTC] in any asset acquired by it" from a failed institution unless such agreement:
 (1) is in writing,
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
 12 U.S.C. Sec. 1823(e).
 
 
 [2]
 Appellant, in an apparent attempt to prove that the alleged agreement was recorded, includes copies of bank records in his reply brief. Since these records were not filed as exhibits in the district court, they are not part of the record on appeal and cannot inform our decision. See Fed. R. App. P. 10(a). We note, however, that these records tend to show that the bank agreed to issue a standby letter of credit and not the "unconditional" letter of credit appellant claims he was promised